LARRY A. STEMPLER, INDIVIDUALLY AND AS GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF BARBARA ANNE STEMPLER, DECEASED, PLAINTIFF-APPELLANT v. E. ALLAN SPEIDELL, M.D., DEFENDANT-RESPONDENT, AND BARBARA CONKLIN, DONNA WILCHEK, JOHN DOE, JOE ROE, ABC, INC., DEF, INC., ETC., DEFENDANTS.

Argued March 18, 1985—Decided July 29, 1985.

*William E. Schkeeper* and *Marc E. Lesser* argued the cause for appellant (*Kronisch and Schkeeper*, attorneys).

*Susan M. Sharko* argued the cause for respondent (*Shanley & Fisher*, attorneys).

*Timothy L. Barnes* submitted a brief on behalf of *amicus curiae* The Association of Trial Lawyers of America (*Barnes & Barnes*, attorneys).

The opinion of the Court was delivered by

STEIN, J.

The issue in this medical malpractice and wrongful death action is whether the defendant's counsel, as an aid to discovery, has the right to attempt to interview decedent's physicians *ex parte* with respect to matters relating to the litigation.

## I

The facts material to our resolution of this question are not disputed. In June, 1983, Larry Stempler, individually and as general administrator and administrator *ad prosequendum* of the Estate of Barbara Anne Stempler, deceased, brought this action against Dr. E. Allan Speidell and a number of fictitious defendants. An amended complaint identified two nurses as individual defendants.

Decedent consulted Dr. Speidell in August, 1981, complaining of pain, abdominal distension and constipation. Dr. Speidell diagnosed a fecal impaction and referred decedent to the emergency room of St. Barnabas Medical Center. Decedent was

admitted to the hospital and treatment was initiated. Dr. Speidell was designated the attending physician. During the early morning hours of the day following her admission, Mrs. Stempler experienced difficulty breathing and failed to respond to stimuli. She was treated emergently for cardiac arrest. Dr. Speidell was notified and Mrs. Stempler was pronounced dead shortly after his arrival at the hospital that morning.

In preparing to defend the claims asserted against Dr. Speidell, his counsel ascertained that decedent had received medical care from a significant number of physicians and health care providers. Dr. Speidell's counsel requested that the plaintiff sign authorizations in order to induce such physicians and health care providers to release information concerning decedent to defendant's counsel. The plaintiff signed each of the authorizations, but only after plaintiff's counsel crossed out the portion of the text reading: "[T]his will further authorize you to discuss any and all information concerning any treatment by you or examinations performed by you concerning the undersigned." In its place, plaintiff's counsel inserted the following statement on each authorization form: "This does not authorize you to have any discussions concerning these records, my care or my claim, but is expressly limited to allowing you to provide copies or inspection of my records and x-rays."

On the assumption that the substituted language on the authorization forms would preclude direct interviews with the physicians who had treated decedent, defendant filed a motion with the Law Division to compel the plaintiff to execute unrestricted authorization forms. In support of the motion, defendant's counsel submitted an affidavit alleging that Dr. Clara J. Szekely, a psychiatrist who had treated decedent, advised the defendant's counsel that the restriction inserted in the authorization would prevent her from communicating with defendant's counsel concerning decedent. Specifically, the affidavit alleged that Dr. Szekely believed her records would be unintelligible without her interpretation, and she would not provide copies of them. According to defendant's counsel, Dr. Szekely was will-

ing to furnish a written interpretation detailing her records, but only if plaintiff authorized her to do so.

Plaintiff resisted the motion to compel unrestricted authorizations since they would permit defendant's counsel to interview personally decedent's treating physicians, a procedure that allegedly is not authorized by our Court Rules. Although plaintiff authorized treating physicians to provide access to decedent's medical records, plaintiff contends that depositions are the only appropriate means by which the physicians may furnish additional relevant, unprivileged information to defendant's counsel without creating an undue risk of disclosing confidential information not related to the litigation.

The Law Division judge granted the defendant's motion to compel plaintiff to furnish unrestricted authorizations. After the Appellate Division denied leave to appeal, this Court granted plaintiff's motion for leave to appeal. *R.* 2:2–2(b).

Although the right claimed by defendant's counsel to conduct personal interviews with decedent's physicians is cast in a nontestimonial discovery context, plaintiff's objections to the interviews have their roots in the testimonial patient-physician privilege. *N.J.S.A.* 2A:84A–22.1 to –22.7.[1] Plaintiff concedes

---

[1]*N.J.S.A.* 2A:84A–22.2 provides:

> Except as otherwise provided in this act, a person, whether or not a party, has a privilege in a civil action or in a prosecution for a crime or violation of the disorderly persons law or for an act of juvenile delinquency to refuse to disclose, and to prevent a witness from disclosing, a communication, if he claims the privilege and the judge finds that (a) the communication was a confidential communication between patient and physician, and (b) the patient or the physician reasonably believed the communication to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor, and (c) the witness (i) is the holder of the privilege or (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted or (iii) is any other person who obtained knowledge or possession of the communication as the result of an inten-

that instituting suit extinguishes the privilege to the extent that decedent's medical condition will be a factor in the litigation. *N.J.S.A.* 2A:84A–22.4.[2] However, as to those elements of decedent's prior medical history that are not relevant to the litigation, plaintiff asserts the continued viability of the privilege, contending that unsupervised *ex parte* interviews with decedent's treating physicians do not afford as complete protection against disclosure of privileged material as would be provided by depositions upon oral examination. *See R.* 4:14.

Because such interviews would take place in a nontestimonial context, no statute or Court Rule expressly precludes defense counsel from interviewing decedent's treating physicians regarding confidential communications. Moreover, even if the testimonial privilege could be imputed to such interviews, no statute or rule expressly precludes *ex parte* interviews concerning unprivileged communications, and the initiation of suit abrogates the privilege as to medical conditions pertinent to the litigation. However, as was the case with decedent's psychiatrist, treating physicians are not likely to cooperate with defense counsel in the absence of authorization from the patient. Accordingly, defense counsel in this case sought to compel plaintiff to furnish written authorization for interviews with decedent's treating physicians. The issue before us is whether plaintiff should be compelled to authorize such *ex parte* communication between defense counsel and decedent's physicians, as an aid to defendant's discovery, and if so, under what protective conditions. A resolution of this issue requires us to weigh the

---

tional breach of the physician's duty of nondisclosure by the physician or his agent or servant and (d) the claimant is the holder of the privilege or a person authorized to claim the privilege for him.

[2]*N.J.S.A.* 2A:84A–22.4 provides:

There is no privilege under this act in an action in which the condition of the patient is an element or factor of the claim or defense of the patient or of any party claiming through or under the patient or claiming as a beneficiary of the patient through a contract to which the patient is or was a party or under which the patient is or was insured.

interests protected by the patient-physician privilege and the physician's professional obligation of confidentiality against the interests advanced by permitting defense counsel to conduct *ex parte* interviews with decedent's physicians regarding those conditions pertinent to the claims asserted in the litigation.

## II

The patient-physician privilege was not recognized at common law in New Jersey, *Hague v. Williams*, 37 *N.J.* 328, 334–35 (1962), nor was it recognized under the common law in other jurisdictions. *State v. Dyal*, 97 *N.J.* 229, 235 (1984); *McCormick's Handbook of the Law of Evidence*, § 98 (2d ed. 1972) [hereinafter *McCormick*]; 8 *J. Wigmore, Evidence,* § 2380 (McNaughton rev. 1961). Moreover, the original New Jersey Supreme Court Committee on the Revision of the Law of Evidence expressly rejected the adoption of the patient-physician privilege, *State v. Dyal, supra,* 97 *N.J.* at 235–36, citing *Report of the Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey, R.* 27, drafter's comment, at 71–72, and it has never been adopted as a Rule of Evidence by this Court. *State v. Dyal, supra,* 97 *N.J.* at 235–36; *State v. Soney,* 177 *N.J.Super.* 47, 57 (App.Div.1980), certif. den., 87 *N.J.* 313 (1981). Thus, in New Jersey the privilege is of relatively recent statutory origin. *L.*1968, *c.* 185 (codified at *N.J.S.A.* 2A:84A–22.1 to –22.7).

The testimonial privilege is justified because it encourages candid communication between patient and doctor without fear of unauthorized disclosures. *McCormick, supra,* § 98 at 213; *see J. Wigmore, supra,* § 2380a, at 828–29.

> It has been said that the purpose of the patient-physician privilege is to enable the patient to secure medical services without fear of betrayal and the unwarranted embarrassing and detrimental disclosure in court of information which might deter the patient from revealing his symptoms to the doctor to the detriment of his health. See *Branch v. Wilkinson,* 198 *Neb.* 649, 256 *N.W.*2d 307, 312 (Sup.Ct.1977); *State v. Staat,* 291 *Minn.* 394, 192 *N.W.*2d 192, 195 (Sup.Ct.1971). [*State in Interest of M.P.C.,* 165 *N.J.Super.* 131, 136 (App.Div. 1979).]

Critics of the privilege maintain that the vast majority of communications between patient and physician are not intended to be strictly confidential, and as to those that are, they argue that the absence of privilege would not deter patients from frank communication with their physicians because their primary concern is to secure proper medical attention. *J. Wigmore, supra,* § 2380a, at 829–30; *McCormick, supra,* § 105, at 225.

This Court previously has articulated the major factors that argue against a broad application of the patient-physician privilege:

> The inevitable effect of allowing the privilege * * * is the withholding of evidence, often of the most reliable and probative kind, from the trier of fact. To the extent that the privilege is honored, it may therefore undermine the search for truth in the administration of justice. *McCormick, supra,* § 105, at 226; 8 *Wigmore, supra,* § 2380a, at 830. Because the privilege precludes the admission of relevant evidence, it is restrictively construed. *State v. Soney, supra,* 177 *N.J.Super.* at 58; *State in the Interest of M.P.C.,* 165 *N.J.Super.* 131, 136 (App.Div.1979). Indeed, distinguished scholars have asserted that the privilege cannot be justified. *See, e.g.,* Chaffee, "Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?," 52 *Yale L.J.* 607 (1943); 8 *Wigmore, supra,* § 2380a, at 832. [*State v. Dyal, supra,* 97 *N.J.* at 237–38.]

■ Notwithstanding the concern that application of the patient-physician privilege may bar the admissibility of probative testimony, there is a clear recognition that, in general, a physician does have a professional obligation to maintain the confidentiality of his patient's communications. *See American Medical Ass'n, Principles of Medical Ethics,* § 9 (1957). This obligation to preserve confidentiality is recognized as part of the Hippocratic Oath. As this Court observed in *Hague v. Williams, supra:*

> The benefits which inure to the relationship of physician-patient from the denial to a physician of any right to promiscuously disclose such information are self-evident. On the other hand, it is impossible to conceive of any countervailing benefits which would arise by according a physician the right to gossip about a patient's health.
>
> A patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts

may become public property. Only thus can the purpose of the relationship be fulfilled. [37 *N.J.* at 335–36.]

Accordingly, courts in other jurisdictions have held that the unauthorized extra-judicial disclosure by a physician of confidential information from a patient may be actionable. *Hammonds v. Aetna Cas. & Surety Co.*, 243 *F.Supp.* 793, den'g reconsideration of 237 *F.Supp.* 96, 101–102 (N.D. Ohio 1965); *Horne v. Patton*, 291 *Ala.* 701, 287 *So.*2d 824 (1973); *Wenninger v. Muesing*, 307 *Minn.* 405, 240 *N.W.*2d 333 (1976) (dictum); *Simonsen v. Swenson*, 104 *Neb.* 224, 177 *N.W.* 831 (1920); *Clark v. Geraci*, 29 *Misc.*2d 791, 208 *N.Y.S.*2d 564 (Sup.Ct. 1960); *Felis v. Greenberg*, 51 *Misc.*2d 441, 273 *N.Y.S.*2d 288 (Sup.Ct.1966); *Berry v. Moench*, 8 *Utah* 2d 191, 331 *P.*2d 814 (1958); *Smith v. Driscoll*, 94 *Wash.* 441, 162 *P.* 572 (1917) (dictum); *see* Note, "Legal Protection of the Confidential Nature of the Physician Patient Relationship," 52 *Colum.L.Rev.* 383, 397–98 (1952) (questioning the utility of recognizing an action for physician's wrongful disclosure other than in judicial or quasi-judicial proceeding); Note, "Medical Practice and the Right to Privacy," 43 *Minn.L.Rev.* 943 (1959); Note, *"Roe v. Doe:* A Remedy for Disclosure of Psychiatric Confidences," 29 *Rutgers L.Rev.* 190, 192–93 (1975). *Contra Quarles v. Sutherland*, 215 *Tenn.* 651, 389 *S.W.*2d 249 (1965); *cf. Collins v. Howard*, 156 *F.Supp.* 322 (S.D.Ga.1957) (complaint alleging wrongful disclosure of test results dismissed; no confidential relationship between physician and patient recognized in Georgia; however, even if there were, mere taking of blood sample does not establish patient-physician relationship).

In *Hague v. Williams, supra*, 37 *N.J.* 328, a case decided prior to the enactment of the testimonial privilege, plaintiffs' infant daughter died eight months after birth because of a congenital heart defect. When plaintiffs filed a claim under a life insurance contract naming the infant as insured and the father as beneficiary, the life insurance company interviewed defendant pediatrician who advised the insurer that the infant had had heart trouble since birth. Plaintiffs sought damages for the allegedly unlawful disclosure of this information by

defendant, contending that he had never advised them of the congenital heart defect and that defendant had no right to disclose such information to the insurer without express authorization. *Id.* at 329–32.

Although this Court recognized that such a cause of action might be sustained in a proper case, it affirmed the trial court's dismissal of the counts of the complaint that sought damages for the unauthorized disclosure, concluding that the patient's right of confidentiality was not absolute but qualified:

> This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions prompted by the supervening interest of society. We conclude, therefore, that ordinarily a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands. Without delineating the precise outer contours of the exceptions, it may generally be said that disclosure may, under such compelling circumstances, be made to a person with a legitimate interest in the patient's health. [*Id.* at 336.]

This judicial recognition that a physician could be held liable for a breach of the obligation of confidentiality adds weight to the argument that unsupervised interviews by defense counsel may not adequately protect the physician's interest in avoiding inadvertent disclosures that could be actionable. Thus, it is asserted that the physician's interest can be guarded only by requiring defendant's counsel to use depositions rather than informal interviews to obtain unprivileged information from plaintiff's physicians.

Defendant, however, argues that requiring the formality of depositions would impose unnecessarily cumbersome restrictions on his right to prepare for trial. He contends that an informal interview is the most appropriate way to ascertain whether any of plaintiff's physicians possess unprivileged information relevant to the defense of the litigation, arguing that in this context depositions are impractical, inefficient, and costly. Defendant maintains that it is unfair to restrict his counsel's access to potential witnesses when no comparable restriction is imposed upon plaintiff.

## III

Courts in our own state and throughout the country are sharply divided on the question. A number of courts in other jurisdictions have held that defendant's counsel should not be allowed to interview plaintiff's treating physicians *ex parte* but should be restricted to depositions. *Weaver v. Mann,* 90 *F.R.D.* 443 (D.N.D.1981) (personal interviews not contemplated by Federal Rules of Civil Procedure (Fed.R.Civ.P.) and could lead to discouraging plaintiff's physicians from testifying); *Garner v. Ford Motor Co.,* 61 *F.R.D.* 22 (D.Alaska 1973) (no specific authorization of interviews contained in Fed.R.Civ.P.); *Wenninger v. Muesing, supra,* 307 *Minn.* 405, 240 *N.W.*2d 333 (depositions guard against unauthorized disclosure of information that is privileged or irrelevant and presence of patient's attorney protects physician from unwitting disclosure of confidential information); *Jaap v. District Ct. 8th J. Dist.,* 623 *P.*2d 1389 (Mont.1981) (Montana Rules do not authorize personal interviews); *Anker v. Brodnitz,* 98 *Misc.*2d 148, 413 *N.Y.S.*2d 582 (Sup.Ct.), aff'd mem., 73 A.D.2d 589, 422 *N.Y.S.*2d 887 (App. Div.1979) (New York Rules do not authorize interviews; difficult for physician to determine the extent to which patient's privilege has been waived because issue of legal relevancy is complex; therefore, rule requiring formal discovery will lessen number of suits against doctors for wrongful disclosure); *Cwick v. Rochester,* 54 *A.D.*2d 1078, 388 *N.Y.S.*2d 753 (Sup.Ct. 1976); *cf. Alexander v. Knight,* 197 *Pa.Super.* 79, 177 *A.*2d 142 (Super.Ct.1962) (doctor owes patient a duty to refuse affirmative assistance to patient's adversary in litigation).

Those courts in other jurisdictions that have upheld the right of defendant's counsel to conduct informal interviews of plaintiff's treating physicians have done so because court rules do not prohibit such interviews and those interviews constitute a more efficient and less expensive method of trial preparation. *Doe v. Eli Lilly & Co.,* 99 *F.R.D.* 126 (D.D.C.1983); *Trans-World Investments v. Drobny,* 554 *P.*2d 1148 (Alaska 1976);

*see also Gailitis v. Bassett,* 5 *Mich.App.* 382, 146 *N.W.*2d 708 (Ct.App.1966) (no reason given for allowing interview of plaintiff's physician); *Arctic Motor Freight, Inc. v. Stover,* 571 *P.*2d 1006 (Alaska 1977) (citing *Trans-World Investments v. Drobny, supra* ).

Several of our unreported lower court decisions adhere to the rule that restricts defendant's counsel to deposition of plaintiff's physicians. Another unreported lower court decision, however, permits *ex parte* interviews of plaintiff's physicians, and compels the plaintiff's execution of unrestricted authorizations.

A recent opinion by our Appellate Division upheld defendant's right to interview *ex parte* plaintiff's treating physicians. In *Lazorick v. Brown,* 195 *N.J.Super.* 444 (App.Div.1984), defendants in a medical malpractice action appealed from an order of the trial court barring two of plaintiff's treating physicians, one of whom had been interviewed by defendant's counsel, from testifying on defendants' behalf as either fact or expert witnesses. The plaintiff had been treated for an upper respiratory infection by defendants, Manrodt and Brown, who prescribed a penicillin derivative known as amoxicillin. Subsequently she came under the care of Drs. Galton and Needle. Plaintiff developed vasculitis, a severe systemic disease resulting in permanently debilitating injuries, which she contended was a reaction to improperly prescribed amoxicillin. *Id.* at 447–48.

Defendants moved to compel plaintiff to furnish authorizations for interviews with Drs. Galton, Needle, and other treating physicians, but the trial court denied the motion without a clear explanation for its ruling. It did not, however, foreclose the possibility of granting the motion at a future time. The doctors had not been asked to speak to defense counsel but apparently were willing to do so. Defense counsel arranged a meeting with Dr. Galton and advised plaintiff's counsel by letter that he should move for a protective order if he objected to the meeting. Plaintiff did not move for a protective order

but reserved the right to object at trial to the admission of any evidence generated by the interview with Dr. Galton. The meeting with Dr. Galton took place and both Dr. Galton and Dr. Needle later furnished written reports expressing doubt that amoxicillin was the cause of plaintiff's condition. The trial court excluded their testimony. *Id.* at 448–50.

In reversing, Judge Botter noted that neither the Court Rules nor the Rules of Evidence prohibit informal interviews by defense counsel for the purpose of obtaining unprivileged information from a potential witness. The Appellate Division observed that it would be unfair to bar the testimony of Drs. Galton and Needle since defendant had attempted to obtain a ruling on the issue and plaintiff had failed to move for a protective order. *Id.* at 450. In recognizing the right of defense counsel to conduct personal interviews with plaintiff's treating physicians, the court reasoned:

> The policy of law is to allow all competent, relevant evidence to be produced, subject only to a limited number of privileges. *See Evid.R.* 7. As stated in *Hague v. Williams*, 37 *N.J.* at 335, "society has a right to testimony and ... all privileges of exemption from this duty are exceptional." We do a disservice to these principles by creating restrictions on the right of parties to talk to potential witnesses. The weighing of policy has been done by the Legislature in the definition of privileges and the terms on which they are lost or surrendered. To speculate about sinister motives of attorneys and treating doctors and to establish additional limitations on the right to seek out evidence as a matter of policy would do mischief to the adversary system. It would be a mistake to say that all testimony of a treating doctor is so tainted because he conversed with his patient's adversary that his testimony must be excluded. Such a rule would inevitably impede the search for truth. Nor can we say that the justice system should pay this price so that the doctor-patient relationship will not be bruised. Defendants ought to have the same right of access as plaintiffs have to potential witnesses, even if they are treating physicians. [*Id.* at 456.]

## IV

In resolving this issue, our objective is to accord adequate recognition to the competing interests that have been identified. Although this litigation involves claims for wrongful death and medical malpractice, the same interests would be present in other types of personal injury litigation.

The defendant's expressed concern is for the right to interview decedent's treating physicians, rather than be restricted to the formality, expense, and inconvenience of depositions conducted pursuant to the Court Rules. An unexpressed interest, we assume, is the hope that one or more of these physicians might provide evidence or testimony that would be helpful to the defendant at trial. Unquestionably, defendant's counsel would prefer to seek out such evidence or discuss the prospect of such testimony in an *ex parte* interview rather than during a deposition attended by plaintiff's counsel.

The plaintiff's interest is twofold. The interest advanced as primary is the desire to protect from disclosure by the physician confidential information not relevant to the litigation and therefore still protected by the patient-physician privilege and the physician's professional obligation to preserve confidentiality. An equally if not more important interest of the plaintiff, although not specifically pressed before us, is the desire to preserve the physician's loyalty to the plaintiff in the hope that the physician will not voluntarily provide evidence or testimony that will assist the defendant's cause. *See Alexander v. Knight, supra,* 197 *Pa.Super.* at 79, 177 *A.*2d at 146 (Members of the medical profession "owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation."); *Hammonds v. Aetna Cas. & Surety Co., supra,* 243 *F.Supp.* at 799 (quoting *Alexander v. Knight, supra,* with approval). *Contra Doe v. Eli Lilly & Co., supra,* 99 *F.R.D.* at 128 ("As a general proposition * * * no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance.").

The physician's interest focuses on prevention of inadvertent disclosure of information still protected by the privilege, since an unauthorized disclosure of such information may be unethical and actionable. Collaterally, the physician needs to be informed that he need not cooperate if he believes that would compromise his professional responsibilities.

█ █ In our view, these competing interests can be respected adequately without requiring the formality of depositions in every case. The Rules regulating pretrial discovery do not purport to set forth the only methods by which information pertinent to the litigation may be obtained. Personal interviews, although not expressly referred to in our Rules, are an accepted, informal method of assembling facts and documents in preparation for trial. Their use should be encouraged as should other informal means of discovery that reduce the cost and time of trial preparation.

Since it is unrealistic to anticipate that decedent's physicians will participate in such interviews without plaintiff's consent, plaintiff's counsel should provide written authorization to facilitate the conduct of interviews. If such authorizations are withheld unreasonably, their production can be compelled, as in this case, by motion. However, conditions should be imposed in the authorizations, or in orders compelling their issuance, that require defendant's counsel to provide plaintiff's counsel with reasonable notice of the time and place of the proposed interviews. Additionally, the authorizations or orders should require that defendant's counsel provide the physician with a description of the anticipated scope of the interview, and communicate with unmistakable clarity the fact that the physician's participation in an *ex parte* interview is voluntary. This procedure will afford plaintiff's counsel the opportunity to communicate with the physician, if necessary, in order to express any appropriate concerns as to the proper scope of the interview, and the extent to which plaintiff continues to assert the patient-physician privilege with respect to that physician.

Plaintiff may also seek and obtain a protective order if under the circumstances a proposed *ex parte* interview with a specific physician threatens to cause such substantial prejudice to plaintiff as to warrant the supervision of the trial court. Such supervision could take the form of an order requiring the presence of plaintiff's counsel during the interview or, in extreme cases, requiring defendant's counsel to proceed by deposition. We are satisfied that the flexibility afforded by our decision will permit trial courts and counsel to fashion appropriate procedures in unusual cases without interfering unnecessarily with the use of personal interviews in routine cases.

Notwithstanding this resolution, we deem the issue raised to be of sufficient complexity as to merit the prompt attention of the Civil Practice Committee, whose recommendation we will solicit with regard to the necessity for amending the Court Rules to deal with this issue more formally.

Accordingly, the order of the Law Division, as modified, is affirmed and the matter is remanded to that court for further proceedings not inconsistent with this opinion.

*For modification and affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.