**Heacock  v.  Sun  Co.  Inc.**

2

C.P. of Philadelphia County, no. 712, March Term 1996.

*Jeffrey M. Freedman,* for plaintiffs.
*James F. Young,* for defendant Sun Company Inc.
*Herbert R. Fineberg,* for defendant Mechanical Instruction Inc.

BERNSTEIN, *J.,* September 12, 1998—On March 21, 1994, plaintiff Howard Heacock was seriously injured in an explosion at defendant Sun Company's Marcus Hook Oil Refinery. Immediately following the explosion, plaintiff Heacock was hospitalized at Crozier

Medical Center. He came under the medical care of Dr. James Zurbach on May 10, 1994, for persistent knee pain. Dr. Zurbach found no evidence of significant knee pathology but recommended an MRI examination. The MRI performed on May 11, 1994 demonstrated no evidence of internal derangement. Dr. Zurbach examined the plaintiff on May 17 and recommended continued physical therapy. Dr. Zurbach last saw the plaintiff on June 7, 1994, at which time he found 107 degrees flexion, and full extension of the knee. Dr. Zurbach ordered "functional capacities" testing which was performed on July 13, 1994.

In their pretrial memorandum, defendant MCI listed Dr. Zurbach as a witness they intended to call at trial. Plaintiff now moves to preclude the testimony of Dr. Zurbach based upon a violation of Rule 4003.6 of the Rules of Civil Procedure. Pursuant to this motion, the court authorized depositions and production of documents concerning all communications between defendant MCI and Dr. Zurbach.

The record, as developed, demonstrates that a paralegal working for the law firm representing defendant MCI in this matter contacted Dr. Zurbach in writing and then subsequently spoke to him by phone. The paralegal asked Dr. Zurbach to review medical records subsequent to his treatment of plaintiff and prepare a report containing opinions as to his own treatment of plaintiff and as to plaintiff's subsequent treatment and progress. In order to provide Dr. Zurbach with subsequent medical records, the paralegal obtained plaintiff's medical records directly from Mr. Heacock's workmen's compensation carrier, PMA. These records were obtained outside of any normal or approved discovery requests.

Pennsylvania Rule of Civil Procedure 4003.6 provides: "Information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter." Defendant never received either authorization or written consent to obtain plaintiff's medical records or to consult with Dr. Zurbach directly.

Accordingly, defendant MCI did violate Pa.R.C.P. 4003.6 by contacting Dr. Zurbach directly and obtaining medical records outside of any method of discovery authorized by the Rules of Civil Procedure and without plaintiff's consent or even knowledge.

In response to this motion, defendant relies upon that portion of Rule 4003.6 which reads: "The rule shall not prevent an attorney from obtaining information from: (1) the attorney's client, (2) an employee of the attorney's client, and (3) an ostensible employee of the attorney's client." Defendant MCI claims that they were entitled to contact Dr. Zurbach because he was paid by a workmen's compensation carrier on behalf of a company which their law firm, the firm of Eisen, Fineberg and McCarthy P.C., represented on other matters. It is claimed that the law firm representing MCI in this case also represents Bogan Inc. in matters separate and apart from the instant action. They also claim to represent the workmen's compensation carrier for plaintiff, namely PMA.[1]

At argument, defendants further claimed that Dr. Zurbach was not a treating physician since he was selected from a list of health care providers designated by the plaintiff's employer and was never selected by plaintiff.

---

1. No proof of this claim has been presented, but the court accepts the representation of counsel as accurate.

No proof of this contention is of record and the contention is irrelevant for Rule 4003.6 purposes.

There has been no appellate decision under Pennsylvania Rule of Civil Procedure 4003.6. Accordingly, the issues presented herein are of first impression in Pennsylvania. Nonetheless, the historical development of Pennsylvania law has direct bearing on its proper interpretation.

Thirty-six years ago, in the case of *Alexander v. Knight*,[2] the trial court ruled that a treating physician's "confidential or fiduciary" obligation to the patient: "includes a duty to refuse affirmative assistance to patient's antagonists in litigation." The Superior Court affirmed the decision of the trial court based upon the trial court opinion.

In *Moses v. McWilliams*,[3] a treating physician agreed to serve as an expert witness for the defendants in a medical malpractice lawsuit brought by his patient against other doctors. The trial court judge, Stanley Greenberg, entered an order that permitted the treating physician to testify only as a "fact" witness but precluded him from testifying as defendant's expert. The precise issue articulated by the appellate court in that case was: "whether a treating physician's unauthorized and judicially unsupervised communications with his patient's adversary in a medical malpractice action are actionable as breach of physician/patient confidentiality." The appellate court held there was no such cause of action, holding that a patient's right to privacy in medical records is a qualified right which is itself reduced whenever a civil suit for personal injuries is filed. Further holding that a witness' absolute immunity from civil

2. 197 Pa. Super. 79, 177 A.2d 142 (1962).
3. 379 Pa. Super. 150, 549 A.2d 950 (1988).

liability extended to pretrial communications, the appellate court barred any claim against the testifying treating physician. The Superior Court noted, however: "Allowing ex parte interviews with treating physicians does not open the door to any and every disclosure by a doctor concerning a plaintiff's medical condition. Rather, disclosure should be limited to that which is pertinent and material to the underlying litigation. If disclosures are neither pertinent nor material, they will be inadmissible at trial. Moreover, by issuing protective orders, a court can place restrictions on the scope of medical discovery without actually prohibiting ex parte interviews." The Superior Court implicitly approved Judge Greenberg's order limiting a treating physician's testimony to the medical care and treatment rendered to the plaintiff.

In addition to Pennsylvania decisions which clearly expressed a strong public policy discouraging ex parte communications between defense counsel and treating physicians, Rule 4003.6 was anticipated by Chief Judge William J. Nealon. In 1987 in *Manion v. N.P.W. Medical Center of N.E. Pennsylvania Inc.*,[4] counsel for defendant Dr. D'Anca failed to tell plaintiff's counsel before speaking with plaintiff's treating physicians. The court said: "The public policy favoring confidentiality between a physician and his patient compels this court to preclude defense counsel from calling Drs. Ambruso and Kae as expert witnesses at trial." Chief Judge Nealon explained this decision: "In view of one, the Alexander line of cases, two, decisions from outside Pennsylvania such as *Petrillo v. Syntex Laboratories Inc.*,[5] *supra*,

---

4. 676 F. Supp. 585 (M.D. Pa. 1987).
5. 148 Ill. App. 3d 581, 102 Ill. Dec. 172, 499 N.E.2d 952 (1986).

and *Stempler v. Speidell,*[6] *supra,* and three, the rationale supporting the prohibition against unauthorized ex parte contacts, *this court believes that the Pennsylvania Supreme Court, if confronted with the issue, would at least require reasonable notice to a plaintiff or his counsel before defense counsel may communicate with plaintiff's treating physician.* " (emphasis added)

Pennsylvania Rule of Civil Procedure 4003.6, approved by the Pennsylvania Supreme Court for effect on July 1, 1991, was specifically designed to codify in the Rules of Civil Procedure reasonable limitations upon the defense's ability to communicate with plaintiff's treating physicians. It accomplishes this goal by restricting defense communications to approved discovery methods which of course require advance notice to plaintiff. The dual purpose behind both the policy and the rule is to preclude treating physicians from acting in a capacity adverse to their patient in court, while simultaneously protecting the right of the defense and the court to obtain access to the truth of past medical treatment. In light of the history and clear language of the rule, the interpretation urged upon the court by the defense must be rejected.

The defense proposes that for purposes of Rule 4003.6, any physician who is paid pursuant to the Workers' Compensation Act is not a treating physician because he has a duty to disclose medical information to the workmen's compensation carrier. This requirement certainly does not mean that the medical practitioner is not a treating physician. Any plaintiff, any workmen's compensation claimant, any patient has an absolute right to be treated by a physician of his or her own choosing. The reasonable limitations placed

6. 100 N.J. 368, 495 A.2d 857 (1985).

by the Act upon this choice of physician to become eligible for payment by a workmen's compensation carrier does not in any way affect the fact that the selected physician is the patient's treating physician. Clearly, and without question, the selected physician's primary obligation is the proper medical care of his patient. This is the primary obligation whether the patient pays the physician directly, whether the physician is paid by a workmen's compensation carrier, or whether the physician is paid by any other third party payor. A treating physician is a physician whose primary responsibility is for the proper medical care and treatment of his patient. As used in Rule 4003.6, the term treating physician distinguishes the practitioner from an examining physician or a specially retained expert physician, both of whom are retained solely for evaluation and forensic purposes.[7] See Pa.R.C.P. 4003.5(a), 4010(a)(1). Any third party payee has the absolute right to those reports needed to justify payment. This does not change the fact that Dr. Zurbach was treating his patient, Howard Heacock, and was a treating physician.

Defendant's claim that no violation of 4003.6 has occurred because plaintiff's medical records were obtained from their "client" is also inaccurate. The term "client" in Rule 4003.6 can only reasonably be read to apply to the specific client involved in that litigation. Rule 4003.6 does not in any way preclude counsel in a medical malpractice case from obtaining information from his or her "client," the defendant, just because the defendant had previously been plaintiff's treating physician. It is absurd to contend that because a law firm represents a physician in a totally distinct capacity in totally distinct litigation, or as a business

7. See Pa.R.C.P. 4003.5(a) and 4010(a)(1).

client, or represents that physician on personal or family matters, that therefore Rule 4003.6 does not bar ex parte communication. Such a fortuitous extraneous representation by any member of a large law firm cannot be any basis to avoid the clear language and intent of the rule.[8] Such a fortuitous representation cannot be known by plaintiff or his counsel and in no way changes the "ex parte" nature of the communication concerning Howard Heacock, which the rule was intended to prohibit.

It is even more clear that the fortuitous representation of the plaintiff's employer or workmen's compensation carrier or health insurance company cannot possibly be a lawful basis for invading the doctor/patient relationship and avoiding the clear mandate of Rule 4003.6. Such an interpretation would permit any law firm that represents Blue Cross or Blue Shield to engage in ex parte communications with any "participating" doctor, virtually any physician in Pennsylvania.

Accordingly, since defendant MCI violated Rule 4003.6, plaintiff's motion is granted.

The next issue presented is fashioning a proper remedy for this violation. In this case, the clear violation produced minimal results because Dr. Zurbach fortui-

---

8. If such ex parte communications are proper, then any law firm that relies on this interpretation in order to avoid the clear limitations of Rule 4003.6 may have a conflict of interest with ethical implications to continuing representation. Such a firm may have a duty to disclose that extraneous representation. It is possible that reliance upon such extraneous representation to avoid the proscriptions of Rule 4003.6 can be the basis for disqualification of the firm. At a minimum, the interpretation suggested by defendant MCI herein would permit plaintiff to inquire into defense counsel's other client and possibly invade those extraneous attorney-client relationships. This was not intended when the rule was promulgated.

tously declined to act as an expert witness for defendant. Plaintiff's request to preclude Dr. Zurbach from testifying must be balanced against all the defendants' rights to present truthful and accurate testimony concerning plaintiff's injury and medical care. The interest of society to have the jury determine the factual issues before them based upon all available truthful and relevant information is of paramount importance. The court notes that in this case there are other "innocent" defendants who may be prejudiced if Dr. Zurbach is entirely precluded from testifying. Accordingly, defendant MCI alone is precluded from calling Dr. Zurbach at trial.

Since it is likely that Dr. Zurbach may be called by another party, an order must be fashioned that ensures that his testimony is not tainted. Accordingly, Dr. Zurbach's testimony, if called at trial, is hereby limited exclusively to those findings and opinions specifically addressed and noted in his contemporaneously recorded notes while functioning as plaintiff's treating physician.

Obviously Dr. Zurbach must be qualified before he can testify to any medical opinion concerning his diagnosis, the appropriateness or need for the medical care rendered by him, the prognosis, or any other medical conclusions contained in his notes. Although sometimes referred to as "factual" testimony this is merely a shorthand expression for the concept of expert testimony related only to the facts of treatment and medical findings and opinions appurtenant to treatment, differentiating that testimony from more general expert opinion.

Dr. Zurbach's diagnosis of plaintiff is necessarily medical opinion evidence. Accordingly, Dr. Zurbach must, of course, be demonstrated as qualified to provide medical opinions before he can testify. Nonetheless,

his testimony can be strictly limited to only those medical findings and opinions which were necessary for the medical care he rendered to his patient. This order precludes all opinion as to the nature of any subsequent medical care. This order does not preclude the jury from hearing any opinions that were necessary for the proper care and treatment at that time. In order to avoid any possibility of tainted opinion as a result of the violation of Rule 4003.6, and because four years have elapsed since Dr. Zurbach last saw the plaintiff, no opinion as to prognosis may be offered.

Thus, as a remedy for the violation of Rule 4003.6, the treating physician's testimony is limited to the facts of treatment of the plaintiff and opinions pertinent thereto.

## ORDER

And now, September 12, 1998, plaintiff's motion in limine to preclude the testimony of Dr. Zurbach is granted to the extent set forth in the attached memorandum opinion incorporated herein.