796 A.2d 283 (2002)
350 N.J. Super. 531
Antoinette CRESCENZO, f/k/a Antoinette Santora, Plaintiff-Appellant,
v.
Walter D. CRANE, D.O., Defendant-Respondent,
v.
Robert J. Pinizzotto, Esq., Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2002.
Decided May 6, 2002.
*284 Robert J. Gillispie, Jr. argued the cause for appellant (Bathgate, Wegener & Wolf, attorneys; Mr. Gillispie, Jr., of counsel and on the brief).
Richard J. Bolger, Toms River, argued the cause for respondent Walter D. Crane (Orlovsky, Grasso, Bolger, Mensching & Halpin, attorneys; Mr. Bolger, of counsel; Colleen L. Brandt, on the brief).
Robert M. Smolen, Mount Laurel, argued the cause for respondent Robert J. Pinizzotto (Swartz, Campbell & Detweiler, attorneys; Mr. Smolen, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by CARCHMAN, J.A.D.
The authority of an attorney to issue a discovery subpoena duces tecum under the seal of the Superior Court pursuant to R. 4:14-7(c) (the Rule) "is a significant one which must be exercised in good faith and in strict adherence to the rules to eliminate potential abuses." Cavallaro v. Jamco Prop. Mgmt., 334 N.J.Super. 557, 569, 760 A.2d 353 (App. Div.2000). Unfortunately, violations of the Rule are both "recurring and vexing." Id. at 560, 760 A.2d 353. Failure to adhere to the Rule's provisions may result in the improper and unauthorized acquisition of records and documents that, although ultimately discoverable, may expose third parties to potential liability as well as infringe on the lawful rights and privileges of those against whom discovery is sought. This is what happened here. An attorney failed to comply with the provisions of the Rule, and a doctor, improperly responding to a discovery subpoena, forwarded privileged records of his patient without notice or authorization. The patient brought an action for damages against both the lawyer and the doctor. We conclude that the complaint stated *285 a viable claim against both parties and reverse the order of the Law Division dismissing the complaint.
Because the judge granted a motion to dismiss for failure to state a cause of action upon which relief can be granted, we accept the alleged facts as true. See Rieder v. State, Dep't of Transp., 221 N.J.Super. 547, 552, 535 A.2d 512 (App. Div.1987). In May 1998, plaintiff Antoinette Crescenzo, f/k/a Antoinette Santora, was named as a defendant in a dissolution complaint filed by her husband Mark A. Santora (the husband). The complaint included the issue of custody of the parties' child. The husband was represented in that action and a related domestic violence action by Robert J. Pinizzotto, Esquire.
In 1992, plaintiff sought treatment from defendant Walter D. Crane, D.O., a licensed physician in New Jersey, for injuries received as a result of an automobile accident. Thereafter, Crane became plaintiff's "family doctor," and both she and her daughter treated with him on a regular basis when necessary. In May 1997, plaintiff sought treatment from Crane for a head injury. At the same time, plaintiff confided in Crane, discussing her deteriorating marriage and recent stress related symptoms she was experiencing. Crane diagnosed plaintiff as suffering from depression and prescribed Prozac. Plaintiff continued to treat with Crane and discuss her symptoms.
In May 1998, plaintiff's husband filed a complaint for dissolution against plaintiff.[1] On May 7, 1998, Pinizzotto served Crane with a subpoena duces tecum which provided in relevant part:
THE STATE OF NEW JERSEY,
TO: Dr. Walter Crane 219 N. White Horse Pike Hammonton, NJ 08037
You are hereby commanded to attend and give testimony before the above named attorney at 105 N. White Horse Pike, Hammonton, NJ 08037 on the 12th day of May, 1998, at 10:00 o'clock A.M., on the part of Defendant, Mark A. Santora in the above entitled action, and that you have and bring with you and produce at the same time and place, the following:
Any and all medical records of Antoinette Santora.
Failure to appear according to the command of this Subpoena will subject you to a penalty, damages in a Civil Suit and punishment for contempt of Court.
Dated: May 7, 1998
s/ s/ ___________________________ __________________________ ROBERT J. PINIZZOTTO, STEVEN W. TOWNSEND, ESQUIRE Clerk[2] Attorney for Defendant
*286 The subpoena was accompanied by a letter of the same date. This letter stated:
Dear Dr. Crane:
Please find enclosed a Subpoena Duces Tecum with respect to any and all medical records relating to Antoinette Santora. This is a Subpoena Duces Tecum wherein that means you can forward the medical records to my attention at the above stated address. If I do obtain a copy of the requested medical records, then there is no reason to have any individual from your office to appear in my office on said Tuesday, May 12, 1998 at 10:00 a.m.
If you have any questions and/or comments with respect to this matter, please do not hesitate to contact me.
Neither an authorization from plaintiff consenting to release of the records nor any notice of a scheduled deposition was included with the subpoena and the accompanying letter. While the husband was sent a copy of the cover letter, no such copy was sent to plaintiff or any attorney purportedly representing her. Both the letter and subpoena were captioned in a domestic violence action identifying plaintiff as the complainant and the husband as defendant.
In response to this subpoena, Crane released plaintiff's medical records and forwarded them to Pinizzotto.
In a letter from Pinizzotto addressed to Francis A. Tomasello, Esq. dated May 14, 1998, Pinizzotto enclosed a copy of the records and set forth his reliance on the contents of the records. He said:
In addition, this letter will confirm that I have also provided to you copies of medical records which I have received from Dr. Walter Crane's office located in Hammonton, New Jersey. Dr. Crane has been the family physician of Antoinette Santora and I intend to rely upon his office notes with respect to the alleged incident which occurred in May of 1997 and further treatment for stress and probably depression. I will also rely upon, and same has been provided to you, a ledger of medications which have been filled by Bellevue Drug Company for your client, Antoinette Santora. Please note that as a result of a review of these medical documents, I intend to request a psychiatric examination of your client, and a drug screening, to determine her current mental capacity as it may relate to the care and custody of the parties' minor child, Dana Santora.
According to plaintiff's complaint in this action, Tomasello was not her attorney, and she received no prior notice regarding these records. In her complaint, plaintiff alleged that
17. In order to gain an advantage with respect to the issue of custody of the couple's daughter, plaintiff's husband introduced, over objection, the wrongfully released medical records containing references to plaintiff's depression, stress and other personal problems and references to plaintiff's use of Prozac.

*287 18. Prior to being produced at the hearing, plaintiff was unaware the [sic] Dr. Crane had released her medical records without her authorization or consent.
Although the results of this custody hearing are not specifically set forth in the record, the husband was awarded, or plaintiff consented to the husband receiving, custody of the child.
Plaintiff filed a multi-count complaint against Crane alleging breach of confidentiality; violation of the physician-patient privilege, N.J.S.A. 2A:84A-22.1; medical malpractice, intentional infliction of emotional distress; and negligent infliction of emotional distress. Crane answered and filed a third-party complaint joining Pinizzotto and seeking indemnification and contribution. Plaintiff then sought to amend her complaint joining Pinizzotto as a direct defendant, whereupon Crane moved to dismiss the complaint asserting that plaintiff failed to state a cause of action as against him. The motion judge granted the dismissal motion and denied the application to amend.
In granting the dismissal, the judge relied on the fact that the medical records were admitted into evidence over the objection of plaintiff. He said:
Even if ... the procedures were wrong, and we'll assume for the purposes of argument that they were, that the subpoena that was issued didn't carry the proper notice to the adversary, the court ends up admitting the records into evidence anyhow, and if they're admissible in evidence they have to be discoverable. There's no way around that, and ... if they're discoverable, to use a basketball analogy, no harm, no foul.[3]
The Rule sets forth the notice provisions and limitations of a discovery subpoena. It is neither difficult to interpret nor complex in compliance. Its component parts require:
[1.] A subpoena commanding a person to produce evidence for discovery purposes may be issued only to a person whose attendance at a designated time and place for the taking of a deposition is simultaneously compelled [;]
[2.] The subpoena shall state that the subpoenaed evidence shall not be produced or released until the date specified for the taking of the deposition and[;]
[3.] [I]f the deponent is notified that a motion to quash the subpoena has been filed, the deponent shall not produce or release the subpoenaed evidence until ordered to do so by the court or the release is consented to by all the parties to the action[;]
[4.] The subpoena shall be simultaneously served no less than 10 days prior to the date therein scheduled on the witness and on all parties, who shall have the right at the taking of the deposition to inspect and copy the subpoenaed evidence produced[;]
[5.] If evidence is produced by a subpoenaed witness who does not attend the taking of the deposition, the parties to whom the evidence is so furnished shall forthwith provide notice to all other parties of *288 the receipt thereof and of its specific nature and contents, and shall make it available to all other parties for inspection and copying.

[R. 4:14-7(c) (emphasis added).]
We have previously noted that the objectives of this Rule are threefold. The Rule provides "litigants with the opportunity of full discovery from non-parties," affords "notice of such inquiries to adversaries," and permits "adversaries an appropriate opportunity to challenge the propriety of such discovery." Cavallaro, supra, 334 N.J.Super. at 566, 760 A.2d 353. In affirming a trial court's disqualification of an attorney who violated this Rule, we recognized the significance of the subpoena power and emphasized the necessity for good faith and strict adherence to the mandates of the Rule. Id. at 569, 760 A.2d 353.
Measuring Pinizzotto's exercise of his subpoena authority against the provisions of the Rule, we observe the following apparent violations: 1) no deposition was simultaneously noticed or compelled; 2) the subpoena did not state: a) that the evidence shall not be produced or released until the date specified in the notice; and b) if the deponent is notified of a motion to quash the records shall not be produced or released until ordered by a court or by consent of the parties; 3) no notice of the subpoena was sent to plaintiff or her attorney; 4) no copy of the cover letter affording the witness the opportunity to forward the records was served on plaintiff or her attorney; and 5) the subpoena was not timely served as the date of service was apparently May 7, 1998, and the return date of the subpoena was May 12, 1998. In sum, Pinizzotto and his client secured allegedly privileged records through the use of an ex parte subpoena process in direct contravention of the Rule. We have previously commented on the violations of the Rule.
The subpoena must notify the recipient that documents shall not be produced or released until the date of the deposition and that a notification of a motion to quash requires withholding the documents until further notice. A practice which obfuscates or conflicts with these requirements, confuses subpoenaed witnesses, and lulls witnesses into avoiding the inconvenience of appearing by encouraging untimely production undercuts the purpose and effectiveness of the Rule. That is the case hereand the result was inevitable given the subpoenas' missing language and the highlighted invitation to produce in the accompanying cover letter.

[Id. at 566-67, 760 A.2d 353.]
For the purposes of our consideration of the issues before us, we must assume that the subpoenaed records were privileged. In fact, the judge so concluded and nothing submitted by any of the parties to this appeal suggests otherwise. That being the case, we first address the issue of whether plaintiff stated a viable cause of action against Crane for disclosure of the privileged records.
In asserting her claim against Crane for a breach of the duty of confidentiality and violation of the doctor-patient privilege, plaintiff relies on our decision in Runyon v. Smith, 322 N.J.Super. 236, 730 A.2d 881 (App.Div.1999), aff'd, 163 N.J. 439, 749 A.2d 852 (2000). In Runyon, a domestic violence action, plaintiff's treating psychologist testified on behalf of defendant that plaintiff was obsessive-compulsive and abusive towards her children. Based on this testimony, the judge modified the temporary restraining order and granted temporary custody of the children to the husband.
*289 Plaintiff brought an action for money damages against defendant for breach of the psychologist-patient privilege, N.J.S.A. 45:14B-28. We reversed the trial judge's dismissal of the complaint and held that plaintiff stated a cause of action against her psychologist. We noted that the psychologist-patient privilege should be considered analogous to the lawyer-client privilege, Runyon, supra, 322 N.J.Super. at 242-45, 730 A.2d 881 (citing Kinsella v. Kinsella, 150 N.J. 276, 297, 696 A.2d 556 (1997)). We concluded that "if a psychologist fails to raise the privilege of the patient and makes disclosure of confidential information without a determination by the court that disclosure is required, the psychologist has breached a duty owed to the patient," and held that plaintiff stated a cause of action against defendant for the unauthorized revelation of confidential information received in the course of treatment. Id. at 249-50, 730 A.2d 881. We distinguished Hague v. Williams, 37 N.J. 328, 336-37, 181 A.2d 345 (1962), which held that a doctor was not liable for revealing confidential information about the patient, noting that the Court has since "interpreted Hague as recognizing that in a proper case, a patient could maintain an action for damages against a doctor for unauthorized disclosure of confidential information." Runyon, supra, 322 N.J.Super. at 248, 730 A.2d 881 (citing Stempler v. Speidell, 100 N.J. 368, 377, 495 A.2d 857 (1985)).
The Supreme Court affirmed on the basis of our opinion, adding that it was "in accord with the Appellate Division's conclusion that a psychologist who fails to assert her patient's privilege and discloses as a witness confidential information concerning that patient without a court determination that disclosure is required may be liable for damages to the patient." Runyon v. Smith, 163 N.J. 439, 441-42, 749 A.2d 852 (2000) (citing Stempler, supra, 100 N.J. at 375-77, 495 A.2d 857).
Crane relies on our language in Runyon, where we noted that "if a psychologist fails to raise the privilege of the patient and makes disclosure of confidential information without a determination by the court that disclosure is required, the psychologist has breached a duty to patient." 322 N.J.Super. at 249-50, 730 A.2d 881 (emphasis added). He argues that the subpoena itself is such a "determination," because it commanded him to produce the documents and failing to do so, he was subject to a contempt citation. We reject this argument.
The doctor's apparent conflict between compliance with the language of the subpoena and respect for the privilege can be resolved in a number of ways short of facing a contempt citation. The first and most obvious is for the doctor to have in his or her possession an authorization signed by the patient whose records are the subject of the subpoena. Failing that, the doctor may contact either the patient or the attorney serving the subpoena. As a matter of last resort, the doctor could consult with his or her personal attorney for appropriate advice. The apparent deficiencies in the subpoena at issue would have been recognized as the patient, who was a party to the litigation, would then be on notice of the quest for the records. If the doctor contacted the subpoenaing attorney, assuming the attorney recognized the deficiencies of his procedure, he could avail himself of proper procedures to seek release of the records without recourse to the doctor or without placing the doctor in jeopardy of contempt. Crane asked rhetorically in his brief, "[w]ill subpoena forms now have to be amended to warn unsuspecting recipients that they will be subject to penalties whether or not they comply with the subpoena?" The question *290 is first answered by reference to the Supreme Court's careful enunciation of the Rule and a procedure designed to eliminate the circumstance presented here; however, there are more compelling circumstances that negate defendant's stated concern. We reject Crane's argument that our holding here subjects a purported "unsuspecting" third-party to exposure for what appears to be compliance with a subpoena. Both N.J.A.C. 13:35-6.5 (requiring any "licensee," defined as "any person licensed or authorized to engage in a health care profession regulated by the Board of Medical Examiners," to "maintain the confidentiality of professional treatment records") and the American Medical Association's Principles of Medical Ethics (June 17, 2001) (stating that a physician "shall safeguard patient confidences and privacy within the constraints of the law"), limit a physicians ability to simply disgorge privileged records as a result of a third-party subpoena. Cf. N.J.A.C. 13:35-6.5(d)(1) to (4) (setting forth the exceptions to involuntary disclosure of confidential records). That a physician may find himself in a difficult position when confronted with the imposing language of a subpoena does not warrant a resolution of the problem by simply providing the records without a release or further inquiry, especially when regulatory provisions governing a doctor's conduct recognize and are designed to preserve the confidentiality of a patient's records. We have identified practical alternatives to simply yielding the recordsa release, contact with the patient or contact with the attorneynone of which impose a significant or undue burden on the doctor when confidentiality is at stake. We hold that plaintiff may proceed with her cause of action against the doctor.
We reach a similar conclusion regarding the offending attorney. Plaintiff sought to amend her complaint to join Pinizzotto as a direct defendant. Although on appeal she generally identifies claims of "wrongful conduct" and both negligent and intentional infliction of emotional distress, the absence of her proposed amended complaint precludes any further analysis, delineation or specificity as to the exact nature of or cause of action against the attorney. Since we reverse the order denying the amendment and allow for further discovery, we make the following observations as to the viability of causes of action against Pinizzotto for the alleged wrongful issuance of the subpoena.
While an attorney's violation of an ethics rule does not in itself state a cause of action in tort, see Baxt v. Liloia, 155 N.J. 190, 197-201, 714 A.2d 271 (1998); see also Petrillo v. Bachenberg, 263 N.J.Super. 472, 483, 623 A.2d 272 (App.Div.1993), aff'd, 139 N.J. 472, 655 A.2d 1354 (1995), defendant is exposed to other potential claims for violation of the Rule. See, e.g., Tedards v. Auty, 232 N.J.Super. 541, 557 A.2d 1030 (App.Div.1989) (permitting a litigant to prosecute a cause of action against an attorney for abuse of process for improper use of a writ of ne exeat); see also Baglini v. Lauletta, 338 N.J.Super. 282, 293-94, 768 A.2d 825 (App.Div.), certif. denied, 169 N.J. 607, 782 A.2d 425 (2001) (alluding to the improper issuance of a subpoena as a predicate act to a claim of abuse of process). Since we are only concerned with the propriety of the denial of the motion to amend, we need not explore the parameters of the proposed causes of action.
Both Crane and Pinizzotto assert that the records were ultimately admissible and thus adopt the trial judge's view of "no harm, no foul." We reject that position. The determination of whether the records are ultimately admissible should not in the first instance be made by a *291 doctor responding to a subpoena or an attorney who violates the Rule and improperly subpoenas the records. In adopting R. 4:14-7(c), the Supreme Court established a procedure that balances the rights of all concerned and affords each interested party an opportunity to test the bona fides of the subpoena and ultimately the admissibility of the records in the underlying cause of action. Integral to such analysis will be a weighing of the limits of the privilege and whether it should be pierced. See Kinsella, supra, 150 N.J. at 302-04, 696 A.2d 556 (noting an exception to the psychologist-patient privilege where piercing of the privilege is required in the best interests of the child); see also In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979) (setting forth a three-part test to determine if a privileged should be pierced). That determination must be made in a courtroom by a judge consistent with appropriate due process concerns including notice and an opportunity to be heard. The fact that this occurred here, after the fact, is of little moment given the utter disregard for the language, spirit and intent of the Rule and, as important, the rights of the patient-litigant.
The Rule demands adherence to its terms. As we have noted, violations of the Rule are both "recurring and vexing." Cavallaro, supra, 334 N.J.Super. at 560, 760 A.2d 353. This appeal provides yet another example of the problem. The power and authority to secure records is a profound one that must be exercised carefully. Failing to do so, those in violation must bear the consequences, which may include the award of damages.
The motion judge dismissed this complaint and denied the motion to amend. Since we conclude that plaintiff has stated a viable cause of action as to both Crane and Pinizzotto, further discovery will be required. We do not address the issue of the scope of plaintiff's damages as that issue will abide the completion of discovery and further motion practice, if necessary. At this stage of the proceedings, we only determine that plaintiff has stated a cause of action against both Crane and Pinizzotto.
Accordingly, we reverse the order of the motion judge dismissing the complaint as to Crane and denying plaintiff's motion to join Pinizzotto as a direct defendant and remand to the Law Division for proceedings consistent with this opinion.
NOTES
[1] Although plaintiff alleges in her complaint that she was a defendant in a dissolution proceeding, no copy of that complaint is contained in the record and the only references to an action between the parties display a docket number containing the prefix "FV," indicating that there was a domestic violence complaint filed by plaintiff against defendant. Since the action which is the subject of this appeal was filed without discovery having been completed, we assume this apparent conflict in the complaint and documents contained in the record will be resolved during the discovery period. In any event, whether the underlying matter was a dissolution or domestic violence matter is irrelevant to our ultimate disposition.
[2] Although not germane to the ultimate disposition of this appeal, the subpoena incorrectly identifies Steven W. Townsend as the Clerk under whose name the subpoena duces tecum was issued. R. 1:9-1, authorizing an attorney to issue a subpoena in the name of the clerk, suggests that "the clerk" refers to the clerk of the court in which the action is pending. Mr. Townsend is the Clerk of the Supreme Court. The proper designation should have been Donald Phelan, Clerk of the Superior Court, where the action was pending.
[3] The motion judge did acknowledge that if Tomasello was not plaintiff's attorney and no records had been forwarded to plaintiff's attorney of record prior to the hearing, he would consider "revisiting" the issue. Although some discovery was conducted prior to the filing of the motion for summary judgment resulting in this appeal, no discovery addressed the issue raised by the judge.