J-S07032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MITZI ANNE WITTMAN AND WILLIAM W. WITTMAN | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : : | |
| | : | No. 895 MDA 2018 |
| JONATHAN BROWN, ASHLEY BROWN, AND BROWN HILL TREE CO., INC. | : : : | |

Appeal from the Judgment Entered May 24, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2013-01131

| | | |
|---|---|---|
| MITZI ANNE WITTMAN AND WILLIAM W. WITTMAN | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : : | |
| v. | : : : : : | |
| | : | |
| JONATHAN BROWN, ASHLEY BROWN, AND BROWN HILL TREE CO., INC. | : : : | No. 965 MDA 2018 |
| Appellants | : | |

Appeal from the Judgment Entered May 24, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2013-01131

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 12, 2019**

Mitzi Anne and William W. Wittman (Wittman) and Jonathan and Ashley

Brown and Brown Hill Tree Co., Inc. (Brown) cross appeal from the declaratory

_____
*   Retired Senior Judge assigned to the Superior Court.

judgment entered by the Court of Common Pleas of Susquehanna County (trial court). After careful review, we affirm.

This case involves real property owned by Wittman over which Brown has an easement. The dispute is over whether the easement is limited to residential uses and, if it is, is Wittman, by his forbearance of commercial uses, barred by laches from enforcing his easement and to what extent.

**I.**

We take the following pertinent facts and procedural history from our independent review of the certified record. On November 19, 1976, Pen-Jer, Inc. transferred a portion of its real property to Frederick L. and Elaine A. Meder (Meder). Pen-Jer filed a corrective deed (the Corrective Deed) on January 31, 1977, "[t]he purpose of which [was] to place of record the correct survey map, as well as the respective rights of the parties hereto, with reference to the fifty (50) foot right-of-way." (Corrective Deed, 1/31/77, at 2). The Corrective Deed provided, in pertinent part:

> EXCEPTING AND RESERVING unto Pen-Jer, Inc. . . . a right of ingress, egress and regress as a covenant running with the land above described, over and along a certain fifty (50) foot right-of-way situated on the Easterly side of the [Meder] parcel . . . as the same is depicted on a map of said survey, a true and correct copy of which is attached hereto and recorded herewith. It is specifically understood that the said right-of-way is reserved for non-commercial, non-industrial use.
>
> TOGETHER WITH a right unto [Meder], their heirs, successors and assigns, of ingress, egress and regress . . . over and along a certain fifty (50) foot right-of-way which runs through the lands of Pen-Jer, Inc. . . . to the [Meder] parcel, described herein, as the same is depicted on the map attached hereto and recorded

herewith, said right-of-way to be used for residential purposes only. **It is specifically understood that this exception and reservation shall not be for commercial or industrial use.**

(*Id.*) (emphasis added). Wittman purchased the Meder property on May 25, 1999, subject to the same terms.

Pen-Jer, Inc. conveyed the adjacent property which contained the above described right-of-way to Robert and Judy Saylor (Saylor). In 2000, Saylor constructed a commercial automotive repair building on the property and used the right-of-way for access to this business. On December 18, 2003, with knowledge that Saylor used the property for the automotive repair business, Brown purchased the property and relocated the Brown Hill Tree Co. to that location. The deed conveying the property stated that it concerned the same land surveyed in 1977 and that the conveyance was

> UNDER AND SUBJECT to that certain fifty (50) foot right-of-way excepted and reserved by the Grantors—said right-of-way having previously been granted to [Meder] . . . as more specifically set forth in a deed dated January 31, 1977, and recorded in Susquehanna County Deed Book 371, page 1139.

(Brown deed, 12/18/03, at 2).

In April 2012, Wittman complained about Brown's commercial use of the property for the first time. In October 2012, the parties, through counsel, drafted a Right-of-Way Use Agreement but did not sign it. (*See* October 2012 Right-of-Way Use Agreement). On September 9, 2013, Wittman filed a complaint against Brown for declaratory judgment and to quiet title seeking to limit Brown's use of the easement to residential purposes only. Brown filed

an answer to the complaint asserting several affirmative defenses, including laches. At the time Wittman filed his complaint, Brown had begun to use the easement for heavy commercial activities, including placing heavy machinery and large piles of mulch on the easement's border. By the time the matter proceeded to the bench trial, Brown had stopped using the right-of-way for heavy commercial use. He continued to use it for light commercial use as he had since 2003, *i.e.*, access by his employees and large trucks to and from the commercial building and parking employee vehicles and commercial equipment.

On February 8, 2018, after a bench trial, the trial court entered an order finding in favor of Wittman and against Brown on the actions for declaratory relief and to quiet title, declaring "that the subject easement is intended to have a residential character." (Order, 2/08/18, at 1 ¶ 1, 2). "As to [Brown's] affirmative defense of laches, the court [found] in favor of [Brown] and against [Wittman] as it relates to [Brown's] light commercial use of the subject easement." (*Id.* at 1 ¶ 3). The court found in favor of Wittman on Brown's remaining affirmative defenses, enjoined Brown from using the right-of-way for heavy commercial purposes but allowed him to continue to utilize it for "light commercial use in a manner consistent with its use from 2000 to 2012." (*Id.* at 2 ¶ 5; *see id.* at 1 ¶ 4). The court denied post-trial motions and the parties cross-appealed. The parties and the court complied with Rule 1925. *See* Pa.R.A.P. 1925.

- 4 -

**II.**

On appeal, Brown claims that the court erred in finding that his deed contained the same commercial restriction for the easement as the Wittman deed and in denying his affirmative defenses other than laches. Wittman challenges the court's decision finding in favor of Brown on the affirmative defense of laches and declaring that he could continue to use the easement for light commercial purposes. After thorough review, we conclude that the parties' issues lack merit.[1]

**A.**

For ease of disposition, we first review Brown's claim that the court erred in finding that the Brown deed contained the commercial restriction on the easement.[2] (***See*** Brown's Brief, at 25-27).

_____

[1] When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion[.] . . . When this [C]ourt reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

***PARC Holdings, Inc. v. Killian***, 785 A.2d 106, 110 (Pa. Super. 2001), *appeal denied*, 796 A.2d 284 (Pa. 2002) (citations omitted).

[2] "Whether a trial court properly interpreted a contract is a question of law and our scope of review is plenary." ***PARC Holdings, Inc.***, ***supra*** at 112 (citation omitted).

- 5 -

"The[] rules [of construction applicable to the grant of an easement] provide that if the location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications." **PARC Holdings, Inc.**, **supra** at 111 (citations omitted). "[H]owever, [if] the language of a granting deed is ambiguous regarding these matters, then the intent of the parties as to the original purpose of a grant is a controlling factor in determining the extent of an easement." **Id.** (citation omitted).

In this case, the trial court found that Brown's commercial use "is not consistent with the residential character of the easement, and that such continued use would unreasonably interfere with Wittman's enjoyment of the easement." (Trial Court Opinion, 2/08/18, at 10). We agree.

The Corrective Deed from common grantor Pen-Jer, Inc., provided Meder with an easement across Pen-Jer's property for "ingress, egress and regress" with the understanding that it "shall not be for commercial or industrial use." (Meder deed, at 2). Pen-Jer retained an easement "reserved for non-commercial, non-industrial uses" to use that portion of the right-of-way that extended over the Meder parcel for ingress and egress to its property. (**Id.**). Reading those two paragraphs together, the language clearly reflects an intent to maintain a residential character for the right-of-way over both the Meder (Wittman) and Pen-Jer (Brown) properties.

The Brown deed, in describing the right-of-way, expressly states that it previously had been granted to Meder "as more specifically set forth in the

deed dated January 31, 1977, and recorded in Susquehanna Deed Book 371, page 1139." (Brown deed, at 2). Although the Brown deed did not contain the non-commercial use language on its face, it referenced the specific language of the Corrective Deed, which did contain such restriction. Hence, based on the foregoing, we conclude that the trial court properly found that the deeds creating and transferring the right-of-way reflected an intent to maintain its residential character, and that Brown's deed incorporated that language.[3] Brown's claim to the contrary lacks merit.[4]

**B.**

Having concluded that the trial court properly found that the easement language precluded non-residential purposes, and that this was referenced in and made a part of the Brown deed, we next address Wittman's claim that the

_____

[3] Our reasoning noting the Brown deed's incorporation of the language of the Corrective Deed differs slightly from that of the trial court. However, "we may affirm the trial court's order on any valid basis." **Plasticert, Inc. v. Westfield Ins. Co.**, 923 A.2d 489, 492 (Pa. Super. 2007) (citation omitted). Also, the trial court did refer to this language in its denial of Brown's estoppel claim and in its finding that Brown had a duty to investigate the nature and scope of the easement based on it. (**See** Trial Ct. Op., at 13).

[4] We also note that, "[o]rdinarily, when a tract of land is subject to an easement, the servient owner may make any use of the land that does not unreasonably interfere with the use and enjoyment of the easement." **Ephrata Area School Dist. v. County of Lancaster**, 938 A.2d 264, 267-68 (Pa. 2007). Here, it is undisputed that Brown utilized Wittman's easement on its property for commercial purposes. We agree with the trial court that this "continued use would unreasonably interfere with the Wittman's enjoyment of the easement[,]" in violation of Brown's duty as the servient property owner. (Trial Ct. Op., at 10).

court erred in applying Brown's affirmative defense of laches to allow the easement to be used for light commercial use.

"[L]aches is . . . principally a question of the inequity of permitting [a] claim to be enforced[.]" ***Sernovits v. Dershaw***, 127 A.3d 783, 788 (Pa. Super. 2014) (citation omitted). "[It] is an equitable bar to the prosecution of stale claims and is the practical application of the maxim[:] those who sleep on their rights must awaken to the consequence that they have disappeared." ***In re Estate of Moskowitz***, 115 A.3d 372, 379 n.6 (Pa. Super. 2015), *appeal denied*, 130 A.3d 1291 (Pa. 2015) (citation and internal quotation marks omitted). In other words:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

***Id.*** at 380 (citation omitted). "Laches arises when a party's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." ***Id.*** (citation and internal quotation marks omitted). "[T]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that . . . the defendant has changed his position in anticipation that the opposing party has waived his claims." ***Id.*** (citation omitted).

In the instant matter, the trial court found:

Brown has demonstrated that substantial delay occurred in connection with Wittman's enforcement of the residential character of the easement. Approximately 12 years lapsed prior to Wittman taking any action to restrict the use of the easement to residential purposes only. The record also established Brown was prejudiced by Wittman's delay. Brown knew Saylor used the property to operate an Auto Body Repair garage and that the easement was utilized to allow access to the commercial garage. Brown would not have purchased the real property but for his knowledge that Saylor had been operating a commercial enterprise at this location for several years without interference from Wittman. Thus, Wittman's failure to seek enforcement of the residential character of the easement resulted in prejudice to Brown. For these reasons, Brown has met his burden of demonstrating that the doctrine of laches bars Wittman's attempt to enforce the easement as it relates to Brown's light commercial use of [the] easement.[a]

> [a] As to "light commercial use" of the easement, such use relates to the need for Brown, Brown's employees, Brown's customers[,] and Brown's commercial vehicles to gain access to the commercial garage, the need to utilize portions of the easement for employee parking and/or equipment storage, and the use of portions of the easement for small mulch piles that do not become to obtrusive. . . . Saylor and Brown utilized [the easement for "light commercial use"] prior to 2012. . . .

(Trial Ct. Op., at 11-12) (one citation omitted).

We discern no abuse of discretion. As long ago stated by the Pennsylvania Supreme Court:

If the one in possession of land acts from an honest conviction that his legal position is sound, and this belief is based in large part on his adversary's conduct, which leads him to the opinion his title is well founded, and on the faith of which he expends large sums of money, the duty of the rival claimant to assert his title promptly is imperative.

***Gailey v. Wilkinsburg Real Estate & Trust Co.***, 129 A. 445, 449 (Pa. 1925).

Here, contrary to Wittman's claims that Brown did not change his position based on Wittman's failure to act, in 2000, Saylor constructed a commercial automotive repair building on the property and used the right-of-way for access to this business without objection. In 2003, Brown purchased the property and expended the sums to move his business, Brown Hill Tree Co., Inc., to the subject property based on his belief that the ability to operate a business on the land would continue after his purchase. Thereafter, he financed the business and undertook the actions necessary to run the Brown Hill Tree Company from that location until 2012 when Wittman complained for the first time when he began to use the property for heavy commercial use. Where Wittman "[slept] on [his] rights [to enforce the easement's terms by allowing a light commercial use, he] must awaken to the consequence that they have disappeared." ***In re Estate of Moskowitz***, ***supra*** at 379 n.6 (citation and internal quotation marks omitted).[5] We find no error in the trial court's finding that Brown could continue to use the easement for light commercial purposes only based on Wittman acceding to such use from the time Saylor built his garage until 2012 when he first objected to it.

---

[5] Because they do not affect our disposition, we need not review Brown's remaining issues challenging the court's failure to apply his other affirmative defenses. The trial court provides a thorough and correct review of these theories in its opinion. (***See*** Trial Ct. Op., at 13-16).

- 10 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2019