JUDITH RITT, PLAINTIFF - APPELLANT, AND STANLEY POGUL, M. D., APPELLANT, v. LEO RITT, DEFENDANT-RESPONDENT.

Argued April 22 and 23, 1968—Decided June 28, 1968.

178

*Mr. Jerome L. Liebowitz* argued the cause for appellant Judith Ritt.

*Mr. Milton D. Liebowitz* argued the cause for appellant Stanley Pogul, M.D. (*Messrs. Liebowitz, Krafte & Liebowitz,* attorneys).

*Mr. Jerrold M. Fleisher* argued the cause for respondent Leo Ritt (*Messrs. Back & Nussman,* attorneys).

PER CURIAM: The plaintiff instituted a separate maintenance proceeding against her husband in the Chancery Division of the Superior Court. Her complaint set forth, in detail, alleged acts of extreme cruelty which, she says, endangered her life and health and compelled her to leave the marital residence. The defendant filed an answer which denied the alleged cruelty and reserved the right to file a counterclaim. He then took pretrial oral depositions of the plaintiff and her psychiatrist Dr. Stanley Pogul. During the plaintiff's testimony she declined to answer questions which related to subjects other than financial matters of assets, income and the like. During Dr. Pogul's testimony, he declined to answer various questions, asserting a physician's privilege not to disclose confidential communications from his patient. But *cf. Hague v. Williams,* 37 *N. J.* 328, 334–35 (1962); 8 *Wigmore, Evidence* § 2380 *et seq.* (*McNaughton rev.* 1961); *McCormick, Evidence* § 101 *et seq.* (1954).

The defendant applied for an order directing that the plaintiff and Dr. Pogul answer the questions and his appli-

cation was granted. See *Ritt v. Ritt*, 98 *N. J. Super*. 590 (*Ch. Div*. 1967). They then sought leave to appeal from the Chancery Division's order (*R. R.* 2:2–3) but their applications were denied by the Appellate Division; thereafter they applied to this Court for leave to appeal from the action of the Appellate Division. See *R. R.* 1:2–3. We granted such leave and heard oral argument as to the scope of pretrial depositions in separate maintenance proceedings (*R. R.* 4:98–5) and as to whether a psychiatrist-patient privilege should be recognized in our State. See *Slovenko, Psychotherapy, Confidentiality and Privileged Communication* (1966); Goldstein & Katz, *Psychiatrist-Patient Privilege*, 36 *Conn. B. J.* 175 (1962); Louisell, *The Psychiatrist in Today's Legal World*, 41 *Minn. L. Rev.* 731 (1957); Guttmacher & Weihofen, *Privileged Communications Between Psychiatrist and Patient*, 28 *Ind. L. J.* 32 (1952); *cf. DeWitt, Privileged Communications Between Physician and Patient* (1958); Note, *The Physician-Patient Privilege*, 56 *Nw. U. L. Rev.* 263 (1961). Since the argument there has been considerable legislative movement on Senate Bill 274 (1968) which is entitled "An Act relating to confidential communications between physician and patients, and supplementing 'The Evidence Act, 1960,' approved June 20, 1960 (P. L. 1960, c. 52)." There has also been considerable administrative movement toward revision of the court rules including *R. R.* 4:98–5.

■ Although our rules have broadly sanctioned pretrial examination in other types of causes, they have taken a more restrictive approach to matrimonial litigation. Experience here and elsewhere has shown that in such litigation pretrial examination "too often becomes an exacerbating circumstance." Breitel, J. in *Hunter v. Hunter*, 10 *A. D. 2d* 291, 198 *N. Y. S. 2d* 1008, 1012 (1960). Because of its very nature, the emotions and tensions run higher, the dangers of abuse are greater, and there is particular likelihood of oppression since one party bears the litigation expenses for both. Accordingly, *R. R.* 4:98–5 forecloses pre-

trial examination in divorce and nullity cases "except by order of the court for good cause shown." Though the rule does not in specific terms mention separate maintenance cases, it has apparently been generally and wisely applied to them except insofar as financial matters are concerned. See *Wheeler v. Wheeler*, 48 *N. J. Super.* 184, 196 (*App. Div.* 1957); *McChesney v. McChesney*, 91 *N. J. Super.* 523, 525 (*Ch. Div.* 1966); 10 *N. J. Practice* § 521 (*Pocket Part* 1968).

In *Wheeler* the Appellate Division noted that the rule did not apply to separate maintenance actions "where examination into the financial means of the respective spouses and the needs of the wife is a matter of prime importance." 48 *N. J. Super.*, at *p.* 196. And in *McChesney v. McChesney, supra*, the Chancery Division stated flatly that pretrial discovery in separate maintenance actions "is limited to matters of assets, income, etc." 91 *N. J. Super.*, at *p.* 525. Despite the trial court's notion to the contrary (98 *N. J. Super.*, at *pp.* 597–98), the "etc." in the foregoing quote clearly has reference to financial items alone. In any event, the obscurities in *R. R.* 4:98–5 will be eliminated in the forthcoming revision of the court rules. As tentatively approved, *R. R.* 4:98–5 will be renumbered 4:79–5 and, *inter alia*, will be explicitly designed to prohibit all oral pretrial examination in all matrimonial actions except "by leave of court for good cause shown."

Though the defendant in the case at hand sought oral pretrial examination, he never applied to the trial court for leave and never made any showing of good cause. Indeed, during the argument before us, it appeared evident that he had no special need or cause for pretrial examination and simply was on a "fishing expedition." 98 *N. J. Super.*, at *p.* 593. The case appears to be run of the mill, the only special item being the defendant's charge that the plaintiff had had a premarital social disease. Although the trial court stated that nothing before it indicated that the defendant had knowledge of that when he married the plaintiff (98 *N. J. Super.*, at *p* 594), in this Court the defendant ack-

nowledged (in an affidavit filed at our request) that before the marriage, his wife had duly advised him of the facts, he spoke to the physician who was treating her, and to the best of his knowledge she had received the necessary treatment.

The restrictions against pretrial examination in matrimonial proceedings apply equally to party and non-party witnesses; accordingly the trial court's direction was erroneous not only as to the plaintiff but also as to Dr. Pogul. That being so, it is unnecessary at this time to pass on Dr. Pogul's claim of privilege. In *Hague v. Williams, supra,* we pointed out that the common law did not recognize a physician-patient privilege and that "although approximately two-thirds of the States have adopted the privilege by statute, New Jersey is not among this number." 37 *N. J.,* at *pp.* 334-35. At the oral argument, the appellants suggested that there were very special modern-day justifications for recognizing a psychiatrist-patient privilege (*cf. Slovenko, supra;* Goldstein & Katz, *supra;* Louisell, *supra*) and they urged that this now be done, either as a matter of growth in the common law (see *Evidence Rule* 5, *N. J. S.* 2A:84A-16), or by broad construction of *N. J. S. A.* 45:14B-28 (*cf. N. J. S. A.* 45:14B-8) which states that confidential communications between licensed practicing psychologists and the individuals who consult them shall be placed "on the same basis as those provided between attorney and client." See *Evidence Rule* 26, *N. J. S.* 2A:84A-20.

*Senate Bill* 274 would establish a physician-patient privilege for our State and would of course cover licensed physicians who specialize in psychiatry. Although it was introduced on January 15, 1968 it was not referred to by the parties in any of their briefs, nor was it mentioned during oral argument. Subsequent to the argument it was passed in the Senate, was amended in the Assembly, and as amended, was passed on June 24, 1968 in both the Assembly and the Senate and awaits action by the Governor. Under the circumstances further consideration here of the appellants' contentions with respect to privilege would not only be

gratuitous but would be impolitic as well. The trial court's order directing the plaintiff and Dr. Pogul to answer the questions addressed to them is in its entirety:

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—None.