951 A.2d 248 (2008)
401 N.J. Super. 438
Karen M. WELCH, Plaintiff,
v.
William B. WELCH, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County.
January 7, 2008.
*249 August J. Landi, Tinton Falls, for plaintiff.
Noel S. Tonneman, Woodbridge, for defendant (Wilentz Goldman & Spitzer P.A., attorneys).

OPINION[*]
GUADAGNO, J.S.C.
In this post-judgment matrimonial matter, defendant, William B. Welch, *250 seeks residential custody of the parties' fifteen-year-old son who currently resides with plaintiff, Karen M. Welch. The principal issue in this case involves the vexing and recurring problem of unauthorized discovery in post-judgment motion practice. Specifically, the court must decide whether the defendant should be permitted to rely upon numerous documents that were obtained as the result of a subpoena that was issued by defendant's counsel without prior court authorization and in the absence of a pending trial or plenary hearing.

I.
It is not clear from the filings when or where the parties were married. M.W. (fictitiously Mark), the only child of the marriage, was born on May 20, 1992. A final judgment of divorce was entered on July 19, 1994, which incorporated a custodial agreement granting both parties shared legal and physical custody of Mark. When Mark was four years old, Karen became the parent of primary residence with William having weekend parenting time. William remarried in 2002 and now resides with his wife and her two children. Karen also remarried, but filed a complaint for divorce in August 2007 which is pending.
William alleges that Karen suffers from significant mental disorders and that Mark is not safe in her care. William claims that Karen has fabricated reports of being victimized by a stalker. He also alleges that she has behaved irrationally during a disagreement over parenting time, that she sent a series of disturbing e-mails to William's counsel during the parenting dispute, that she was "unbalanced" and "unstable" during her pending divorce from her current husband, and that she has "brainwashed" Mark and turned him against William.
Karen denies each of William's allegations and affirms that Mark is well-grounded emotionally and an honors student taking advanced-placement high school courses. She maintains that a change of custody is not warranted, as Mark is a high-functioning teen who is thriving in her care.
The Subpoena
William's notice of motion, certification, and letter brief were filed with the court on November 8, 2007. Two days earlier, William's counsel issued a subpoena duces tecum with an ad testificandum clause to the Marlboro Township Police Department, calling for the production of "[a]ny and all incident reports and/or summonses and/or other records pertaining to [Karen M. Welch and William B. Welch]." In addition to directing the production of documents, the subpoena also "commanded" the supervisor of the Marlboro police records department to "attend and give testimony" before this court on November 30, 2007, the date on which defendant's motion was scheduled to be heard.
In a cover letter accompanying the subpoena, William's counsel encouraged the records custodian to forward the requested documents in advance of the return date, stating that, while counsel could not "guarantee that production of the documents will eliminate your need to provide court-room testimony, it may be helpful in that regard." The subpoena also contained a warning: "Failure to appear according to the command of this Subpoena may subject you to a penalty, damages in a civil suit, and punishment for contempt of court."
In response to the subpoena, the Marlboro Township Police Department provided 98 pages of police reports to William's counsel on November 26, 2007, who then forwarded a copy of the documents to Karen's counsel on the following day. William *251 now relies on these documents to demonstrate Karen's alleged mental instability. For the reasons discussed below, the court will not consider any of the documents produced by the Marlboro Township Police Department, as the documents have been obtained in violation of court rules.

II.
While the rules of discovery are to be liberally construed and accorded the broadest possible latitude, Blumberg v. Dornbusch, 139 N.J.Super. 433, 437-38, 354 A.2d 351 (App.Div.1976), discovery in family actions has, historically, been far more limited than in other areas of litigation. In 1968, the New Jersey Supreme Court reversed a trial court's order in a matrimonial matter that directed the wife and her psychiatrist to submit to pretrial depositions. The Court found failure to show good cause and stressed the dangers of abuse of discovery in family matters stating that, "[a]lthough our rules have broadly sanctioned pretrial examination in other types of causes, they have taken a more restrictive approach to matrimonial litigation. Experience here and elsewhere has shown that in such litigation pretrial examination `too often becomes an exacerbating circumstance.'" Ritt v. Ritt, 52 N.J. 177, 179, 244 A.2d 497 (1968)(quoting Hunter v. Hunter, 10 A.D.2d 291, 198 N.Y.S.2d 1008, 1012 (N.Y.App.Div.1960)).
In 1981, the New Jersey Supreme Court Committee on Matrimonial Litigation recommended in their Final Report, that the former Rule 4:79-5 (now replaced by Rule 5:5-1) be revised to allow for depositions as of right except with regard to grounds for divorce, separate maintenance, or nullity. These historical protections were put in place to avoid further aggravation of the hostilities of spouses toward each other, especially where children were concerned. The Committee, in "Phase Two" of its Final Report, explained why discovery in matrimonial matters is far more limited than that available in Law Division litigation:
[The] Committee has also considered whether discovery rights of matrimonial litigants should be expanded to those available in the Law Division of the Superior Court. The Committee is satisfied that some expansion is warranted to permit depositions of parties to the litigation as to matters concerning collateral relief  child custody and support, alimony, equitable distribution and related matters. However, the Committee remains firmly convinced that discovery, other than interrogatories, relating to the underlying cause of action should not be permitted except by order of the Court.

N.J. Administrative Office of the Courts, Final Report of the Supreme Court Committee on Matrimonial Litigation, July 16, 1981 (emphasis supplied).
While there has been a significant expansion of the right to discovery in matrimonial matters since Ritt was decided, see Gerson v. Gerson, 148 N.J.Super. 194, 372 A.2d 374 (Ch.Div.1977); Merns v. Merns, 185 N.J.Super. 529, 449 A.2d 1337 (Ch.Div.1982), these changes have been limited to the pretrial stage of litigation. Post-judgment matrimonial motions continue to have little or no discovery absent a court order.
Discovery in family matters is governed by Rule 5:5-1, which provides discovery as a matter of right as follows:
(a) Interrogatories as to all issues in all family actions may be served by any party as of course pursuant to Rule 4:17.
(b) An interrogatory requesting financial information may be answered by reference to the case information statement required by Rule 5:5-2.

*252 (c) Depositions of any person, excluding family members under the age of 18, and including parties or experts, as of course may be taken pursuant to Rule 4:11 et seq. and Rule 4:10-2(d)(2) as to all matters except those relating to the elements that constitute grounds for divorce.
Clearly, these three subsections apply to pretrial discovery. Rule 5:5-1(d) provides that all other discovery in family actions shall be permitted only by leave of court for good cause shown except for production of documents (Rule 4:18-1); request for admissions (Rule 4:22-1); and copies of documents referred to in pleadings (Rule 4:18-2), which shall be permitted as of right. Production of documents under Rule 4:18 is not accomplished through subpoena, but rather by written request.
Pretrial subpoena are governed by Rule 4:14-7, which permits the issuance of that process with very strict limitations.[] It is important to note that Rule 4:14-7 is limited to cases in the pretrial stage of litigation and does not apply to post-judgment motions. The authority of an attorney to issue a subpoena duces tecum for purposes of discovery "is a significant one which must be exercised in good faith and in strict adherence to the rules to eliminate potential abuses." Cavallaro v. Jamco Prop. Mgmt, 334 N.J.Super. 557, 569, 760 A.2d 353 (App.Div.2000).
Egregious use of subpoena power to obtain information in an impermissible manner has been held to be a violation of the New Jersey Rules of Professional Conduct, in particular, R.P.C. 3.4(c) (fairness to opposing party and counsel) and R.P.C. 4.1 (truthfulness in statements to others). Id. at 572, 760 A.2d 353. The need for good faith with regard to subpoena power is heightened in matrimonial matters, as the issuance of unauthorized subpoena, especially in post-judgment family motion practice, presents great potential for abuse. In the instant matter, the subpoena was issued before the motion was even filed and was made returnable on a motion date. Clearly, defendant was aware that there was no plenary hearing pending at which testimony could be offered, as he requested in his motion that the court order a plenary hearing on the custody issue.
Under Rule 5:5-1, discovery in summary actions require leave of the court upon a showing of good cause. Although, Rule 4:67-1 indicates that the rules pertaining to summary actions do not apply to "matrimonial actions," post-judgment matrimonial motions are summary in nature and are resolved with little or no discovery. In Depos v. Depos, 307 N.J.Super. 396, 704 A.2d 1049 (Ch.Div.1997), Judge Dilts denied the defendant's request to take the deposition of the plaintiff in a domestic violence action, finding that those proceedings are summary actions that require a showing of good cause before discovery is ordered. The court defined summary actions as "short, concise and immediate" and "designed to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment." Id. at 399, 704 A.2d 1049. The court noted that domestic violence hearings must be held within ten days of the filing of the complaint pursuant to N.J.S.A 2C:25-29(a). The court also described the good cause standard to be shown before discovery can be granted in a summary action and concluded that allowing *253 a deposition would not effectuate the legislative intent and purpose. Id. at 400, 704 A.2d 1049.
While post-judgment matrimonial motions are not subject to the same time constraints as domestic violence actions, they are nevertheless summary in nature. Rule 5:5-4, which governs motions in family actions, requires specific content in the pleadings to allow prompt resolution, (Rule 5:5-4(a)); strict adherence to page limitations, (Rule 5:5-4(b)); short return dates for the filing of motions and cross-motions, (Rule 5:5-4(c)); and, unless good cause is shown, the entry of a written order at the conclusion of the motion hearing, (Rule 5:5-4(f)). These limitations are stringent and clearly intended to resolve issues in a summary fashion. A return date of twenty-four days is not nearly enough time to conduct meaningful discovery and allow an adversary to file a timely response.
Discovery in post-judgment family motions is at the discretion of the court and requires a preliminary threshold showing. The reason for this restriction is clear: if parties had the right to engage in unfettered discovery every time a post-judgment motion was brought, it would convert motion practice into unwieldy mini-trials resulting in lengthy delays which Rule 5:5-4 was specifically designed to avoid.
After Karen's counsel learned of the subpoena to the Marlboro Township police, he filed a cross-motion seeking sanctions against William's counsel for issuing the subpoena. In a reply brief, William's counsel cited Crescenzo v. Crane, 350 N.J.Super. 531, 796 A.2d 283 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 196 (2002), as her sole authority justifying the issuance of the subpoena. Counsel's reliance on Crescenzo is misplaced. Ironically, Crescenzo, involved an attorney who failed to comply with the provisions of Rule 4:14-7(c) and improperly issued a subpoena duces tecum for discovery. Most notably, the subpoena in Crescenzo was issued in a pre-judgment matrimonial matter and provides no authority for the issuance of a subpoena in a post-judgment proceeding without prior court authorization.
In her letter brief, William's counsel also notes that Karen failed to move to quash the subpoena. It is not clear what conclusion counsel wishes the court to draw from this fact, and none is offered. The court has found no authority for the proposition that an improperly issued subpoena somehow acquires validity by dint of the failure of the opposing party to object. Nor does counsel's argument that the Marlboro documents were "critical to this matter" change the outcome. In Crescenzo, supra, the court rejected the lower court's holding that, since improperly subpoenaed records would ultimately be admissible, the principle of "no harm no foul" should apply. Id. at 543, 796 A.2d 283. Judge Carchman found that ultimate admissibility was "of little moment given the utter disregard for the language, spirit and intent of the Rule and, as important, the rights of the patient-litigant." Ibid.
Consequently, the court will disregard the subpoenaed records submitted by William from the Marlboro Township Police Department. Since these police reports constitute the lynchpin of William's motion and he has otherwise failed to establish that a change of custody is in Mark's best interests, his motion for a change in residential custody is denied.
Counsel Fees
Court rules do not provide authority for the actions that William's attorney has taken here in issuing the Marlboro subpoena. Moreover, William's counsel fails to put forth a cognizable explanation *254 for invoking such a sensitive and powerful court process without prior court authorization and in the absence of a pending plenary hearing.
Karen has prevailed in this matter and none of William's allegations have been substantiated. Moreover, William's counsel's violation of court rules in issuing the Marlboro subpoena constitutes bad faith. Assessment of counsel fees is appropriate in a case where there has been a violation of a discovery rule, as we have here. Cavallaro, supra, 334 N.J.Super. at 572, 760 A.2d 353. While neither party has addressed the Rule 5:3-5(c) factors on award of counsel fees, including the financial circumstances of the parties and their ability to pay, it is clear that "where one party acts in bad faith, the relative economic position of the parties has little relevance." Kelly v. Kelly, 262 N.J.Super. 303, 307, 620 A.2d 1088 (Ch.Div.1992). The court in Yueh v. Yueh, 329 N.J.Super. 447, 748 A.2d 150 (App.Div.2000), cited the Kelly case and explained that where a party acts in bad faith the purpose of a counsel fee award is to protect the innocent party from unnecessary costs and to punish the guilty party. Id. at 461, 748 A.2d 150.
Finally, the fees submitted by Karen's counsel are eminently reasonable. Thus, Karen's motion for counsel fees is granted.
Karen's Motion for Sanctions
While it is necessary to enforce the rules as to discovery against those who fail or refuse to comply, Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338, 78 A.2d 705 (1951), the court has not considered the Marlboro documents. Therefore, Karen has not been prejudiced by the issuance of the subpoena. In addition, Karen has been awarded counsel fees. While discovery rules must be complied with, drastic sanctions should be imposed sparingly. Id. at 339-40, 78 A.2d 705. Lack of prejudice to Karen and the award of counsel fees militate against the imposition of sanctions. Thus, Karen's motion for sanctions is denied.
NOTES
[*] Portions of this opinion have been redacted.
[] Paragraph (c) was added to Rule 4:14-7 to prohibit the apparently proliferating practice of some attorneys, wholly unauthorized, to obtain documentary discovery from non-parties, unilaterally and without notice to other parties, by the simple expedient of issuing a subpoena. Pressler, Current N.J. Court Rules, comment 3.1 on Rule 4:14-7(c)(Gann 2007).