**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0961-20

MICHAEL A. MORONEY,

    Plaintiff-Appellant,

v.

BARBARA F. MORONEY,

    Defendant-Respondent.

_____

> Argued January 11, 2022 – Decided February 2, 2022
>
> Before Judges Messano and Enright.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0852-18.
>
> Michael J. Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael J. Confusione, of counsel and on the briefs).
>
> Alina Habba argued the cause for respondent (Habba Madaio & Associates LLP, attorneys; Michael T. Madaio, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Michael A. Moroney appeals from orders entered on June 16 and October 19, 2020.[1] We affirm.

Plaintiff and defendant Barbara F. Moroney were married in 1989 and have three adult children. On May 14, 2019, the parties executed a Marital Settlement Agreement (MSA), and incorporated the agreement into a May 20, 2019 Judgment of Divorce.

Pursuant to Paragraph 5.3 of the MSA, the parties agreed to equitably distribute three retirement accounts which were deemed "assets of the marriage." Two of the accounts, a JPMorgan Chase 401K worth about $219,000, and a John Hancock IRA, valued at roughly $63,000 were held in plaintiff's name. The third account, a W. Grace 401K account worth roughly $14,000, was held in defendant's name. The parties agreed to liquidate the John Hancock IRA, as well as defendant's 40lK, and share in the proceeds as directed in Paragraph 5.3. As for the JPMorgan Chase 401K, the parties agreed to the following, as outlined in Paragraphs 5.4 and 5.5 of the MSA:

> 5.4. [Plaintiff] shall liquidate his JPMorgan Chase 401K and use those funds to pay off [the parties' son's]

<hr/>

[1] Although plaintiff's civil case information statement reflects that he also challenges an August 24, 2020 order, he did not address this order in his appellate brief. Therefore, we deem his appeal from this order abandoned. See State v. Shangzhen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2022).

A-0961-20

currently outstanding medical expenses [and] the parties' [Internal Revenue Service (IRS)] taxes for the [following] tax years and estimated amounts:

2015 Federal  $48,465.00
2016 Federal  $75,890.00
2017 Federal  $23,900.00
Illinois State Taxes  $1[,]657.00
New York State Taxes  $6[,]468.00
New Jersey [State Taxes]  $8,700.00

[Plaintiff] will provide [defendant] with a complete accounting of his liquidation of the JPMorgan Chase 401K and payment of taxes and medical bills as referenced in this paragraph.

5.5.  Following the liquidation of the JPMorgan Chase 401K, [plaintiff] shall pay all joint tax debt, including the tax debt as listed above.  If there are any additional monies left after the payment of taxes, the parties shall then pay off any outstanding medical bills for the[ir] son[].  If there are any funds remaining after the payment of taxes and medical bills for [their son], the parties shall equally divide any monies remaining.

[(Emphasis added).]

The parties also stipulated under Paragraph 8.1 of the MSA:

If either party defaults in the performance of any provision of this agreement, and if the other party shall institute and prevail in legal proceedings to enforce the performance of such provisions by the defaulting party, then the defaulting party shall pay to the other party, the necessary and reasonable court costs and attorney's fees incurred by the prevailing party in connection with such legal proceedings.

3

Additionally, per Paragraph 17.2 of the MSA, the parties agreed to "attend at least one . . . mediation session to resolve any post-judgment dispute before filing a Notice of Motion."

In November 2019, defendant received a notice from the IRS, advising her that no payments had been made toward the 2015 tax liability. Her attorney contacted plaintiff, also an attorney, and asked him to confirm that he would satisfy the tax debt as set forth in the MSA. In February 2020, plaintiff notified defendant's counsel that he was "accepting the installment payment plan offered to [him] by the IRS" and that defendant would "need to make her own arrangement with the IRS, based upon her own financial situation." He also forwarded an itemization of debts he paid from the JPMorgan Chase 401K funds, along with a check made payable to defendant in the sum of $42,834.47, purportedly representing "exactly half of the remaining proceeds from the distribution of the JPMorgan Chase [40lK] after paying the past due state taxes and [their son's] uninsured medical expenses." (Emphasis added). The itemization showed that by February 2020, plaintiff had used almost $5,300 from the JPMorgan Chase account to satisfy various medical expenses for the parties' son.

A-0961-20

In February 2020, defendant moved to enforce the MSA. She certified she had yet to receive a complete accounting from plaintiff "evidencing the liquidation of the JPMorgan Chase 401K account and payment of the outstanding tax amounts and medical bills, as required under the [MSA.]" In a separate certification, her attorney requested that the judge order plaintiff to "immediately pay all amounts owed to the IRS on [d]efendant's behalf" for tax years 2015 through 2017, and compel plaintiff to pay defendant's counsel fees and costs, due to his "failure to abide by the terms of the [MSA]."

Plaintiff opposed the motion, certifying he "received an installment payment plan from the IRS in which the IRS . . . calculated the maximum amount the IRS believes [he] can afford to pay on a monthly basis, based upon [his] financial situation, until such time as the debt is satisfied." Further, he attached copies of two emails sent to defendant's counsel in June 2019, wherein he admitted "[t]he federal taxes have not been satisfied yet" but that he paid "in full" the state taxes owed to New Jersey, New York, and Illinois, and by then, had paid "in full" two medical providers who were owed over $3,500 for their son's surgery. Plaintiff did not explain in his certification why he prioritized the payment of certain medical bills over the payment of the parties' IRS debt, nor did he address defendant's counsel fee request.

A-0961-20

On June 16, 2020, the judge issued a comprehensive, cogent written opinion, accompanied by an order: (1) compelling plaintiff to liquidate the JPMorgan Chase 401K account to the extent not already done; (2) directing him to remit payment to the IRS "in full satisfaction of . . . outstanding tax debts for the tax years 2015, 2016 and 2017 . . . and any interest accrued and owing . . . within ten . . . days"; (3) noting an enforcement hearing would be "immediately schedule[d,]" "exposing [p]laintiff to both fine and incarceration" upon defendant providing a "certification of [plaintiff's] non-compliance" with the June 16 order; and (4) awarding defendant counsel fees and costs in the sum of $4,615, based on plaintiff's "disregard of his obligations pursuant to the clear language of the parties' MSA [which] necessitated the filing of [defendant's] application and the counsel fees incurred by [her]."[2]

Plaintiff moved for reconsideration of the June 16 order, arguing it was improvidently entered because defendant failed to pursue mediation before seeking enforcement of the MSA, contrary to Paragraph 17.2 of the agreement. During argument on the motion, the judge questioned why plaintiff waited until after the entry of the June 16 order to seek enforcement of the mediation

---

[2] Although the June 16 order included other provisions, we do not address them as they are irrelevant to the instant appeal.

A-0961-20

provision in the MSA. Plaintiff responded that his belated argument regarding Paragraph 17.2 was attributable to his "inadvertence." The judge found the plain language of the MSA compelled the parties to submit to mediation before resorting to motion practice, so on August 24, 2020, he entered an order, granting plaintiff's reconsideration motion and staying the June 16 order pending mediation.

During a virtual hearing in October 2020, the parties apprised the judge they were unable to resolve their differences in mediation. Therefore, on October 19, 2020, the judge lifted the stay imposed under the August 24 order and reinstated the June 16 order. But he allowed plaintiff an additional thirty days to remit payment to the IRS in full satisfaction of the debts owed for tax years 2015 through 2017, and an additional thirty days to satisfy the counsel fees awarded under the June 16 order. Plaintiff unsuccessfully moved to stay the October 19 order.

On appeal, plaintiff raises the following contentions:

POINT I

THE FAMILY COURT ERRED IN FINDING THAT PLAINTIFF BREACHED THE PARTIES' MSA BY FAILING TO PAY IN FULL, BY HIMSELF, AND IMMEDIATELY, THE ENTIRE MARITAL TAX DEBT OWED TO THE IRS.

7

A.  The family court misconstrued the plain language of the parties' MSA.

B.  The family court at least erred by not holding an evidentiary hearing to determine what the parties' common intention was for Sections 5.4 and 5.5 of their MSA.

C.  Even if plaintiff is solely responsible for paying the entire mar[it]al tax debt owed to the IRS, nothing in the MSA requires plaintiff to pay this debt in full and immediately as the family court ruled.

D.  The family court erred in awarding $4,615 in attorney's fees to defendant.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters."  Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).  "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere[.]"  Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)).  "We will reverse only if we find the trial judge clearly abused his or her discretion[.]"  Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).  However, "all legal issues are reviewed de novo."  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

8

It also is well established that matrimonial settlement agreements are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just" because they are "essentially consensual and voluntary in character[.]" Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). However, courts retain the equitable power to modify support provisions at any time. Lepis v. Lepis, 83 N.J. 139, 145 (1980).

Regarding plaintiff's Points I, IA and IB, we note that our courts treat marital settlement agreements as contracts and interpret them accordingly. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007). "[T]he judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose." Owens v. Press Publ'g Co., 20 N.J. 537, 543 (1956). "Where the 'principal purpose' of the parties is found, 'further interpretation of the words of contract should be such as to attain that purpose, if reasonably possible[.]'" Ibid. (quoting Corbin on Contracts, § 545).

Here, the judge found that the language of the MSA is clear, and that the "MSA remain[ed] equitable and fair and thus, . . . must be enforced." We agree.

A-0961-20

Accordingly, we are satisfied no plenary hearing was necessary. See Segal v. Lynch, 211 N.J. 230, 264-65 (2012) ("[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute."). Indeed, Paragraph 5.5 of the MSA plainly states that "[f]ollowing the liquidation of the JPMorgan Chase 401K, [plaintiff] shall pay all joint tax debt, including the tax debt as listed above [in Paragraph 5.4]." Given this explicit language, and considering that Paragraph 5.3 of the MSA made clear the JPMorgan Chase 401K was one of three marital retirement accounts to be equitably distributed, we disagree with plaintiff's contention that he was mistakenly ordered to use these 401K funds to pay the tax debt to the IRS "by himself."

Similarly, we are not persuaded by the argument raised in Point IC. While we acknowledge the MSA included no specific date by which plaintiff was to pay the parties' joint tax debt, we note Paragraph 5.5. of the agreement explicitly provided for plaintiff to satisfy "all tax joint tax debt, including the tax debt as listed" in the preceding paragraph "[f]ollowing the liquidation of the JPMorgan Chase 401K." As plaintiff contends this 401K "account was liquidated and closed on May 31, 2019," we are not convinced it was error for the judge to give him thirty days after entry of the October 19 order to satisfy a joint tax debt that remained outstanding almost a year-and-a-half after plaintiff received the

10

proceeds from this 40lK account (not to mention additional funds from two other retirement accounts). This is particularly true, given his representation to the judge in October 2020 that there were monies still "remaining from the liquidation of" the JPMorgan Chase 401K, which he was prepared to turn over to the IRS.

Further, while plaintiff advised the court in October 2020 that the IRS had completed "a thorough forensic analysis of [his] finances and determined that [he did not] have the ability to pay [the debt] in time and that's why they put [him] on the repayment plan," the record reflects he failed to submit proofs at that hearing to document his inability at that time to satisfy the joint tax debt consistent with the terms of the MSA. Moreover, the record demonstrates that although the judge afforded plaintiff an additional thirty days to come into compliance with the MSA, he also preserved plaintiff's right to argue at any forthcoming enforcement hearing why he was unable to satisfy the IRS debt. Under these circumstances, we decline to conclude the judge erred in directing plaintiff to satisfy the IRS debt within thirty days.

Finally, regarding Point ID, we are cognizant that "[a]n allowance for counsel fees is permitted to any party in a divorce action, R[ule] 5:3-5(c), subject to the provisions of Rule 4:42-9." Slutsky v. Slutsky, 451 N.J. Super. 332, 366

(App. Div. 2017). "An award of counsel fees and costs in a matrimonial action rests in the [sound] discretion of the trial court." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 544-45 (App. Div. 1992) (citing Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). Additionally, "where a party acts in bad faith[,] the purpose of the counsel fee award is to protect the innocent party from [the] unnecessary costs and to punish the guilty party." Welch v. Welch, 401 N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)). Moreover, as we have previously observed, a trial court's failure to give effect to a provision in an agreement regarding counsel fees constitutes an abuse of discretion. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008).

As a threshold matter, we note that plaintiff failed to contest defendant's request for counsel fees and costs when she first moved for enforcement of the MSA. Further, as discussed, Paragraphs 5.4 and 5.5 of the MSA compelled plaintiff to use proceeds from the JPMorgan Chase 401K account to "pay off the parties' IRS taxes for the tax years [listed]," and only "[i]f there [were] any additional monies left after the payment of taxes," were the outstanding medical bills for the parties' son to be paid. Yet plaintiff's own submissions to the trial court confirm he used some of the 401K proceeds to satisfy over $5,000 in

medical expenses for the parties' son by February 2020, rather than apply those funds to the outstanding marital IRS debt. Given these facts and considering that Paragraph 8.1 of the MSA permits a counsel fee award against a defaulting party, we perceive no basis to disturb the modest counsel fee award granted to defendant.

To the extent we have not specifically addressed plaintiff's remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0961-20