**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3578-23

CHRISTOPHER TUCKER,

    Plaintiff-Appellant,

v.

DANIELLE WEISS,

    Defendant-Respondent.

_____

> Argued September 11, 2025 – Decided September 19, 2025
>
> Before Judges Mawla and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FD-08-0570-23.
>
> Christopher Tucker, appellant, argued the cause pro se.
>
> Rebecca A. Berger argued the cause for respondent (Obermayer Rebmann Maxwell & Hippel, LLP, attorneys; Rebecca A. Berger, on the brief).

PER CURIAM

Plaintiff Christopher Tucker appeals from a Family Part order dated June 3, 2024, adjudicating various financial, custody, and parenting-related disputes between him and defendant Danielle Weiss. We affirm.

The parties met in 2019 and had a child a few months before they separated in January 2023. This litigation commenced shortly thereafter, culminating in the June 2024 order. In April 2023, plaintiff filed an application for custody, which was met by a cross-motion for custody and child support from defendant.

On May 18, 2023, the court entered an order, among other things, directing the parties to custody and parenting time mediation, and setting an interim parenting time schedule with no overnights for plaintiff pending the outcome of mediation. The order set a neutral pick up and drop off location and required the parties to communicate through an online application. The court also held child support would be effective May 11, 2023, the filing date of defendant's application, and directed the parties to exchange financial information. In the event mediation and settlement discussions failed, the matter would be re-listed.

On August 23, 2023, the parties entered a consent order agreeing to withdraw their pending applications in favor of continuing mediation to reach a

A-3578-23

global resolution. The consent order continued plaintiff's court ordered parenting time. The parties also agreed plaintiff would pay defendant $1,500 per month; comprised of $800 in child support and $700 for a loan defendant took out on plaintiff's behalf. The consent order memorialized the parties' agreement to limit their communications to their child's health and welfare.

Mediation continued and the parties entered a consent order on November 6, 2023, which they signed but never filed with the court. This order contained a detailed parenting plan, including a shared parenting time schedule. The parties agreed to return to mediation to further address the details of the parenting time and holiday schedules.

Approximately one week later, defendant filed an emergent custody application alleging she had learned of abuse allegations against plaintiff regarding a child from a prior relationship. The court heard the emergent application as a motion in the normal course, and in the interim directed the parties to follow the May 18 and August 23 orders, but not the November 6 consent order.

Defendant filed an emergent application relating to the Thanksgiving holiday parenting time and plaintiff cross-moved to enforce the November 6 consent order. On December 8, 2023, the court ordered a plenary hearing on

3

custody, parent of primary residence, vacations, holiday parenting time, and counsel fees. The court ordered discovery and granted defendant's request for a custody evaluation, directing the parties to share equally in its cost. It also set a temporary parenting schedule and granted the parties joint legal custody pending the hearing.

Plaintiff moved for reconsideration of the December order. He requested a modification of custody and credit for the child support he paid under the August 23 consent order. Defendant opposed the motion. The court scheduled a hearing for January 19, 2024. On January 22, 2024, the court entered an order directing plaintiff's attorney to submit an order memorializing all the issues to be addressed at the plenary hearing. However, the parties resolved a few issues, including when parenting time exchanges would occur, and agreed to alternate the years in which they would have vacation priority. These items were later incorporated into an order dated April 2, 2024.

The court also entered an order related to the January hearing when the parties returned to court on April 9, 2024. This order denied plaintiff's request for reconsideration to dispense with the plenary hearing, finding defendant had a right to a plenary hearing and to present new information affecting the child's best interests. The court granted reconsideration as to whether there should be

4

a custody evaluation and reserved the issue pending the outcome of the hearing. It likewise granted reconsideration regarding the custody and parenting time schedule and found the parties had "entered into an agreement" enforceable as a contract when they entered the November 6, 2023 consent order.

The court reserved judgment on plaintiff's request: for make-up parenting time; to set the time for parenting time exchanges; to implement a holiday schedule; for vacation parenting time; and to enroll the child in play therapy. It granted plaintiff's request: to establish child support pursuant to the guidelines; for a credit for direct child support paid to defendant; and to alternate the child as a tax dependent. The court denied defendant's request for counsel fees.

The court also addressed the outstanding issues of: holidays; make-up parenting time; play therapy; and child support on April 9, 2024. It then entered a second order reserving judgment on child support and stating the effective date for the modification of child support would be September 1, 2023.

Defendant disputed plaintiff's income. She noted he was self-employed in a plumbing and HVAC business, and told her he had applied for and was awarded Veterans Affairs disability benefits. As a result, the court took testimony and concluded plaintiff did not receive the disability benefits. It ordered plaintiff to produce his income information to review his business

A-3578-23

expenses because he reported a gross income of $228,275, yet claimed his income was $71,245 after expenses. The court ruled it would use $75,000 for defendant's income on the child support guidelines.

The court denied each party's request for counsel fees, entered a holiday parenting time schedule, denied the request for play therapy, granted in part plaintiff's request for make-up vacation time, and denied plaintiff's request for make-up parenting time. The order reflected defendant had withdrawn her request for a plenary hearing.

Following entry of the order, plaintiff submitted additional income information but claimed he needed a forensic accountant and was unable "track down [every] billing statement[ because it] became voluminous, [and] overly burdensome." He provided his 2022 tax returns and business expenses to the court for analysis.

On April 18, 2024, the court wrote to the parties advising it had included the following expenses in plaintiff's income for child support purposes: car and truck; office; travel; meals; utilities; dues and subscriptions; and stationery. The court requested further explanation of the following expenses: insurance; vehicles, machinery, and equipment; other business property; employee benefits program; "other"; and training, software, and recruiting.

A-3578-23

Plaintiff's counsel replied they needed additional time to respond to the court's letter. Counsel argued the guidelines did "not require additional documentation for determining expenses added back to business income as that is the role of a forensic accountant, though same has never been requested." Ultimately, on April 30, 2024, plaintiff's counsel responded with an explanation of the expenses and alleged plaintiff's total income was $132,170. Defendant answered on May 6, 2024, asserting plaintiff's income was $168,761.

On May 20, 2024, the court wrote to the parties, advising it reviewed the submissions and decided to add the following additional expenses to those listed in its April 18 letter, namely: other business property; software; and vehicles, machinery, and equipment. The court enclosed its guidelines calculations.

The following day the court held a final hearing and considered the arguments of counsel. It concluded plaintiff's income for child support purposes was approximately $162,473, representing his profits plus the expenses the court added back into his income. The court used defendant's highest W-2 earnings of $75,000. This resulted in a child support figure of $106 per week and payment of $44 per week towards the arrears balance of $4,182. The court reduced the outstanding amount of the loan to a judgment against plaintiff

7

totaling $2,897.01. Defendant moved to stay the child support and loan determinations, which the court denied.

The court also set the pick up time for parenting time and ruled holiday parenting time superseded vacations. It ordered the parties to exchange itineraries for vacations.

I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (alterations in original) (quoting Cesare, 154 N.J. at 412 (internal quotation marks omitted)). On appeal, we interfere "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark.'" Ibid. (internal quotation marks omitted) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "[A]ll legal issues are reviewed de novo." Ricci v.

Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

## II.

Plaintiff argues the trial court was biased against him, ignored his motions, and its rulings favored defendant. He claims the court denied him proper opportunity to adduce financial records, and calculated child support using his highest earnings and defendant's lowest earnings. Plaintiff alleges the court made disparaging remarks regarding his arguments and permitted procedural irregularities such as late submissions from defendant, which violated his right to a fair hearing. He claims the court improperly accepted and relied on unproven allegations and narrative from defendant and her attorney, whom it allowed to make disparaging remarks about plaintiff, which painted him in a prejudicial light and led to unfair decisions. Plaintiff asserts the court decided issues that were not properly before it without notice or a formal motion, which deprived him of due process and irreparably harmed him.

"[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008) (emphasis omitted). A judge must recuse themselves from "proceedings in which their impartiality or the appearance of their impartiality might reasonably be

questioned," Code of Jud. Conduct r. 3.17(B), or if "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g).

An appearance of impropriety exists if "a reasonable, fully informed person [would] have doubts about the judge's impartiality." DeNike, 196 N.J. at 517. "Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2. "[T]he mere appearance of bias may require disqualification." State v. Marshall, 148 N.J. 89, 279 (1997) (citing R. 1:12-1(f)). "However, bias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." Id. at 186. "[T]he belief that the proceedings were unfair must be objectively reasonable." Id. at 279 (citing R. 1:12-1(f)).

"Due process is a fundamental right accorded to both parties" in Family Part cases. T.M.S. v. W.C.P., 450 N.J. Super. 499, 505 (App. Div. 2017). "At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (alteration omitted) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003)).

Having considered the record pursuant to these principles, we reject plaintiff's assertions the court was biased and prejudicially rendered decisions. At no point in these lengthy proceedings did plaintiff ever raise the issue of judicial bias or seek disqualification of the court on those grounds. As a result, he waived this issue. See State v. Russell, 481 N.J. Super. 333, 353 (App. Div. 2025). This issue is also improperly raised for the first time on appeal. See Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973).

Even considering the substance of plaintiff's claims, we find no merit to them. The record shows the court's rulings were based on the evidence and arguments presented to it, and were fair. The court was patient and courteous to the parties and their counsel. It demonstrated flexibility in permitting them to settle their disputes and decided the issues that could not be mutually resolved. Plaintiff's claims of bias lack merit.

Plaintiff's arguments of procedural improprieties and a violation of due process are also unsupported by the record. Our review of the record shows he received notice and was able to respond to every claim raised by defendant throughout the litigation. Additionally, the court demonstrated flexibility in its willingness to hear successive motions and emergent applications, and

11

conference the matter with the parties to narrow the disputed issues before deciding the unresolved issues, which does not evince a due process violation.

III.

Plaintiff claims the court failed to enforce the November 6, 2023 consent order; a January 19, 2024 oral ruling; all mediated agreements; and an April 9, 2024 order. Instead, he asserts it reversed its decisions, which created confusion and prejudiced him.

There is no credible evidence to support these claims. The January 19, 2024 order recognized the November 6, 2023 consent order as a binding agreement. The January 19 order also memorialized the court's oral rulings from that date.

"An order 'which adjudicates fewer than all of the claims as to all the parties' is interlocutory and shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Sadeeshkumar v. Venugopal, 478 N.J. Super. 25, 40 (App. Div. 2024) (quoting R. 4:42-2(b)). The procedural history of this case demonstrates this litigation was, for lack of a better phrase, conducted on a rolling basis; meaning that as issues were resolved orders were entered to memorialize them. However, the parties' ongoing disputes over the Thanksgiving holiday, the abuse

12

allegations, and plaintiff's income, necessitated the court reserve its rulings on certain issues and hold further hearings. As a result, many of the orders issued prior to the final order on June 3, 2024, were interlocutory, and their enforcement subject to the court's discretion. Again, we discern no abuse in the court's exercise of discretion.

IV.

Plaintiff argues the child support calculation is incorrect because the court included legitimate business expenses in his income, contrary to standard accounting practices and IRS guidelines, thereby inflating his income and child support. Although he provided full financial disclosure, he asserts the court relied on incomplete or misleading information from defendant, further distorting the child support calculation.

"The trial court has substantial discretion in making a child support award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001) (citing Pascale v. Pascale, 140 N.J. 583, 594 (1995)). "If consistent with the law, such an award 'will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 315-16 (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999) (internal quotation marks omitted)).

A-3578-23

The child support guidelines are premised upon the principles "that (1) child support is a continuous duty of both parents, (2) children are entitled to share in the current income of both parents, and (3) children should not be the economic victims of divorce or out-of-wedlock birth."  Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 1, www.gannlaw.com (2026).  As a result, the guidelines include income derived from "the operation of a business minus ordinary and necessary operating expenses (see IRS Schedule C)."  Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A, at 2, www.gannlaw.com (2026) (Instructions for Lines 1 through 5 of the sole-parenting worksheet, determining income from sources of income ¶ b).  "Income and expenses from self-employment or the operation of a business should be carefully reviewed to determine gross income that is available to the parent to pay a child support obligation.  In most cases, this amount will differ from the determination of business income for tax purposes."  Id. at 3 (Instructions for Lines 1 through 5 of the sole-parenting worksheet, determining income from self-employment or operation of a business ¶ b).

The guidelines exclude the several categories of expenses from ordinary and necessary expenses.  Ibid. (Instructions for Lines 1 through 5 of the sole-

14

parenting worksheet, determining income from self-employment or operation of a business ¶ c). In addition, the court can disregard "any other business expenses that the court finds to be inappropriate for determining gross income for child support purposes." Ibid. (Instructions for Lines 1 through 5 of the sole-parenting worksheet, determining income from self-employment or operation of a business ¶ c (11)).

Pursuant to these principles, we find no error in the court's child support calculations. The court explained in detail how it derived plaintiff's income and afforded both sides the opportunity to submit their calculations. The incomes derived for both parties were based on the substantial, credible evidence, did not require the input of an expert, and were not an abuse of discretion.

V.

Plaintiff challenges the denial of his request for counsel fees. He argues defendant's bad faith, evidenced by her repeated filings and reneging on agreements, warranted an award of counsel fees.

Counsel fee determinations are "discretionary, and will not be reversed except upon a showing of an abuse of discretion." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (citation omitted). "[W]here a party acts in bad faith the purpose of a counsel fee award is to protect the innocent party from

unnecessary costs and to punish the guilty party."  Welch v. Welch, 401 N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)).

Bad faith conduct is where a party acts with an improper motive, including to economically damage the other party.  Kelly v. Kelly, 262 N.J. Super. 303, 307-08 (Ch. Div. 1992).  For these reasons, an award of counsel fees predicated on bad faith requires a "more compelling showing."  Steiner v. Steiner, 470 N.J. Super. 112, 131-32 (App. Div. 2021).  This is because a party may defend its position "without having to bear the cost of being wrong."  Id. at 132.

The court rejected plaintiff's request for counsel fees on grounds defendant had reneged on the parties' December 2023 consent order.  It reasoned defendant had not acted in bad faith because she "was justified and . . . had legitimate risk concerns" regarding the child's safety.

Given the context, the denial of counsel fees to plaintiff and the decision to require the parties to each bear their own fees were not an abuse of discretion. As we recounted, the issues in this litigation were in constant flux and evolving. Neither party held a monopoly on the winning arguments.  Each took positions that were rejected by the court, but neither acted in a manner warranting a counsel fee award because of bad faith.

16

## VI.

In sum, we conclude the court neither abused its discretion nor misapplied the law when it entered the June 9, 2024 order.  To the extent we have not addressed an argument raised by plaintiff it is because it lacks sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17

A-3578-23